679 S.E.2d 329

**TIMBERLINE FOUR SEASONS RESORT MANAGEMENT CO., INC. and Long Run Realty, Inc., Petitioners Below, Appellants,**

v.

**Pat J. HERLAN, individually, and Timberline Realty, Inc., and Timberline Resort Realty, Inc., Respondents Below, Appellees.**

**No. 34151.**

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2009.

Decided June 9, 2009.

---

John J. Wallace, IV, Joseph A. Wallace, Elkins, Richard F. Neely, Neely & Callaghan, Charleston, for Appellants.

Stephen G. Jory, Esq., McNeer, Highland, McMunn and Varner, L.C., Elkins, for Appellees.

PER CURIAM:

The instant action is before this Court upon the appeal of Timberline Four Seasons Resort Management Co., Inc., and Long Run Realty, Inc. [hereinafter sometimes referred to as "Appellants"][1] from a July 9, 2007, order entered by the Circuit Court of Tucker

---

1. Appellant Timberline Four Seasons Resort Management Company, Inc. [hereinafter sometimes referred to as "Timberline Four Seasons"] is a West Virginia Corporation doing business as a year round resort in Canaan Valley, Tucker County, West Virginia. Appellant Long Re- alty, Inc., a subsidiary of Timberline Four Seasons, is also a West Virginia Corporation. Appellee, Pat Herlan, is a real estate broker in Canaan Valley, West Virginia. Appellees Timberline Resort Realty, Inc. and Timberline Realty, Inc. are West Virginia Corporations run by Ms. Herlan.

County denying Appellants' Petition for Injunctive Relief. Herein, Appellants allege that the circuit court erred by not finding that an agency relationship existed between Appellants and Pat Herlan or her brokerage businesses, Timberline Realty, Inc., and Timberline Resort Realty, Inc. [hereinafter sometimes referred to as "Appellees"]. Appellants also allege that the circuit court erred in its application of W. Va.Code § 30–40–12 to the case *sub judice*, and in failing to return certain business records and telephone numbers deemed necessary by Appellants to the operation of their real estate division. Such records were taken by Ms. Herlan when she vacated Appellant's property. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the July 9, 2007, order of the Circuit Court of Tucker County is reversed and remanded.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Timberline Four Seasons is a family-owned four seasons resort. Pat Herlan was hired by Timberline Four Seasons in 1991. She provided real estate brokerage services for Timberline Four Seasons' real estate division until January, 2007.[2] At the time Ms. Her-lan was first hired, no written contract of employment was entered into between the parties. However, from May 1994 to May 1996, a written agreement existed between the parties.[3] This was the only written agreement between them. Upon the expiration of the 1996 contract, no further written agreement was ever put in place. Sometime in 2000, Ms. Herlan incorporated Timberline Resort Realty, Inc. and Timberline Realty, Inc.[4]

During her time with Timberline Four Seasons, Ms. Herlan was paid a salary and she received a W–2. Appellants allege that Ms. Herlan was paid for the brokerage services she provided. However, Appellees allege that as a general partnership, Timberline Resort Realty was operated wholly separate and apart from Timberline Four Seasons. Ms. Herlan alleges that she received a salary from Timberline Four Seasons only for her promotional work for the resort and for her liaison between the resort and independent developers of resort real estate, not for her brokerage services.[5] She asserts that at the same time, she operated her real estate sales and rental businesses, Timberline Resort Realty, Inc. and Timberline Realty, Inc., as a licensed broker out of the Roundhouse, which she claims she rented from Timberline Four

2. Timberline Four Seasons' real estate division sells and promotes residential/subdivisions of the Timberline property and manages homeowner's property in the rental pool providing cleaning and upkeep services for profit. Appellants assert that the real estate division is one of the primary money making divisions of Timberline Four Seasons, and thus, it cannot meet its loans and survive without the real estate division.

3. The contract is part of the record herein. It provides, in pertinent part:

Your primary responsibility is the supervision of all activities related to Timberline Realty office, including both the real estate sales function and the rental function. Specific responsibilities in this area include the following:
1. All broker functions under West Virginia law.
2. Timely financial reporting to the Owners on realty activities (monthly financial statements by the 15th of each month in agreed upon format)
3. Community relations on realty activities (e.g. broker association work, etc.)

4. Customer relations work to assure a successful service oriented business.

4. Appellants assert that Ms. Herlan incorporated these businesses without prior notice to Timberline Four Seasons. Appellants further allege that until the incorporation of Timberline Realty, Inc. and Timberline Resort Realty, Inc., Ms. Herlan had used those names as d/b/a's, thus there was no noticeable change to the public upon incorporation. Conversely, Appellees allege that the real estate brokerage had been operating for many years out of the Roundhouse, and, in 2000, had changed from a sole proprietorship for which Herlan served as a broker, to a general partnership for which she again served as a broker and Murray Dearborn served as associate broker.

5. Appellees assert that the income which Herlan received from Timberline Four Seasons was, as reflected on the W–2 forms, income which was attributed to her personally. It was not paid to the partnership brokerage. Her partner, Murray Dearborn, did not receive a W–2.

Seasons.[6] Appellees assert that because neither Herlan nor Dearborn were owners or officers of Timberline Four Seasons, they could not have been brokers for that corporation. Likewise, Appellees assert that because Timberline Four Seasons did not have a licensed real estate broker as an owner or officer, it could not have engaged in the business of real estate brokerage.

Ms. Herlan's employment continued until early 2007, whereupon she was asked to vacate the Roundhouse.[7] Upon her departure, Ms. Herlan removed certain business records that Appellants claim are vital to the continued operation of its real estate division.[8] Ms. Herlan also hired a computer technician to remove and/or delete certain information from computer software located on the premises and to move such information to her new location. The cost of erasing and moving this data was approximately $25,000.00.[9] In addition to tangible and electronic records, Ms. Herlan also had the telephone numbers for the Roundhouse moved to her new location.[10] However, computer hardware, the server, accounting records, and blank computer software were left at the Roundhouse. There is no dispute that Timberline Four Seasons owns those items, which were utilized by Ms. Herlan throughout her employment.

Shortly following Ms. Herlan's departure from the Roundhouse, Appellants filed a Petition for Injunctive Relief in the Circuit Court of Tucker County, West Virginia, on June 24, 2007. On July 3, 2007, Appellees filed their Answer and the circuit court held a trial on the petition. Following the trial, the parties submitted proposed Findings of Fact and Conclusions of Law. The circuit court entered its Findings of Fact and Conclusions of Law on July 6, 2007, and denied the petition for injunctive relief. Specifically, the circuit court found that Timberline Resort Realty was not owned or controlled by Timberline Four Seasons, and thus, it was not an agent under the exclusive control of Timberline Four Seasons with respect to the real estate functions performed by Pat Herlan d.b.a. Timberline Resort Realty. Appellants filed a Motion for a New Trial on July 18, 2007. Thereafter, on July 31, 2007, the circuit court denied Appellant's motion, whereupon Appellants filed a Petition for Appeal with this Court.

## II.

### STANDARD OF REVIEW

We have traditionally held that "Unless the absolute right to injunctive relief is conferred by statute, the power to

---

6. The Roundhouse is the real estate headquarters for Timberline Four Seasons, and the location where Ms. Herlan performed her duties. The issue of whether Ms. Herlan rented the Roundhouse or whether Timberline Four Seasons provided the property for Ms. Herlan's use is a fact that is largely disputed between the parties. No written rental contract is apparent in the record.

7. A January 3, 2007, termination letter from Dr. Frederick Reichle on behalf of Timberline Four Seasons demanded that Herlan turn over all of her brokerage business, books and records to another real estate brokerage, wholly owned by Timberline Four Seasons. Appellee alleges that because Timberline Four Seasons lacked authority to make such a demand, Herlan located her brokerage elsewhere.

8. These records included sales listing agreements, vacation home rental contracts, future reservation lists, and Ms. Herlan's trust accounts. Appellants assert that Ms. Herlan left a list of approximately 6,000 names of customers, which was virtually useless to Appellants.

9. This Property Plus software tracked each unit's availability, reservations, deposits and final pay-

ments, as well as the split of the receipts to pay hotel/motel tax, cleaning staff, commissions, and the balance to the homeowner. Historical information was contained therein, as well as many future reservations for the upcoming year. Ms. Herlan asserts that in place of the data-filled Property Plus software which she removed, Herlan left, at a cost to her of $19,750.00, a new Property Plus software program for the next brokerage which would occupy the Roundhouse.

10. Appellees claim that when Ms. Herlan commenced the brokerage business at the Roundhouse, she found that the telephone was no longer in service because the phone bill had not been paid. In order to re-activate service, Ms. Herlan had to set up the account in her name and secure payment of the account with her credit card. She alleges that the account remained in her name, and then in 2007, in the name of Timberline Resort Realty. Over the years, several other telephone and facsimile numbers have been obtained, all in the name of Herlan or the brokerage.

grant or refuse or to modify, continue or dissolve a temporary or permanent injunction, whether preventative or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion."

Syl. Pt. 11, *Stuart v. Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 (1956).

■ Additionally, we have held that the standard of review for challenges to Findings of Fact and Conclusions of Law by a Circuit Court is a two-pronged deferential standard. "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 1, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996). With these standards of review in mind, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

Appellants allege that the circuit court erred by not finding that an agency relationship existed between Appellants and Pat Herlan or her brokerage businesses, Timberline Realty, Inc., and Timberline Resort Realty, Inc. [hereinafter sometimes referred to as "Appellees"]. Appellants also allege that the circuit court erred in its application of W. Va.Code § 30–40–12 to the case *sub judice,* and in failing to order the return of certain business records and telephone numbers to Appellants which were necessary to the operation of Appellant's real estate division which had been taken by Ms. Herlan when she vacated Appellant's property. We will address each of these arguments in turn.

### A. *Agency Relationship*

The central dispute in this case revolves around the classification of the nature of the business relationship between the parties, and the issue of whether an agency relationship existed. Appellants assert that the circuit court erred in failing to find that an agency relationship existed between the parties. Conversely, Appellees assert that an agency relationship did not exist because Ms. Herlan was paid by Timberline Four Seasons for her promotional work, not for any service as a broker. Appellees further allege that Herlan's business as a real estate broker was operated separately from Timberline Four Seasons and it would have been unlawful for it to have been operated otherwise pursuant to West Virginia statutory law.

■ In *State ex rel. Key v. Bond,* 94 W.Va. 255, 118 S.E. 276 (1923), we defined an agent in the following manner:

"An agent in the restricted and proper sense is a representative of his principal in business or contractual relations with third persons; while a 'servant' or 'employee' is one engaged, not in creating contractual obligations, but in rendering service, chiefly with reference to things but sometimes with reference to persons when no contractual obligation is to result."

Syl. Pt. 3, *Id.* In assessing whether an agency relationship exists, we have traditionally held that

"[t]here are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of *respondeat superior:* (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative."

Syl. Pt. 5, *Paxton v. Crabtree,* 184 W.Va. 237, 400 S.E.2d 245 (1990). "One of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." Syl. Pt. 3, *Teter v. Old Colony,* 190 W.Va. 711, 441 S.E.2d 728 (1994).

■ Specifically, Appellants take issue with the circuit court's finding that Timberline Four Seasons did not maintain any power of control over Ms. Herlan. We agree with the contentions of the Appellants. We find that Appellants presented sufficient evidence demonstrating that Timberline Four Seasons retained some degree of control over the manner in which Ms. Herlan performed her obligations.

In reviewing the facts of the case *sub judice*, the first three elements of the test are easily met. First, Timberline Four Seasons selected and has engaged Ms. Herlan in some form of employment capacity since 1991. Second, it is undisputed that Timberline Four Seasons paid Ms. Herlan for her services. Third, Timberline Four Seasons had the power of dismissal, and this is evidenced by the fact that it terminated the employment relationship with Ms. Herlan in early 2007. However, the last element, the determinative factor of control, requires more analysis of the facts presented.

■ In its findings of fact and conclusions of law entered by the circuit court on July 6, 2007, the circuit court relied upon certain facts in denying Appellant's request for injunctive relief. For instance, the circuit court relied upon the fact that Ms. Herlan's written employment contract had expired and no written agreement was in place at the time Timberline Four Seasons terminated the relationship. However, "[p]roof of an express contract of agency is not essential to the establishment of the relation. It may be inferred from facts and circumstances, including conduct." *General Elec. Credit Corp. v. Fields,* 148 W.Va. 176, 181, 133 S.E.2d 780, 783 (1963). When we review the circumstances herein and the conduct that occurred between the parties, we can infer that an agency relationship existed.

In addition to the above, the circuit court relied upon the fact that Timberline Four Seasons gave no exclusive real estate listings to Appellees, nor did it receive any portion of the commissions earned by Appellees. It also relied upon the fact that all the rental management contracts held by Timberline Resort Realty were executed between the rental unit owners and Pat Herlan, as broker, and that Timberline Four Seasons was not a party to those contracts. It further found that Timberline Four Seasons had no authority over the Appellee's separate accounts, and no ownership interests in the trust accounts held by Pat Herlan as a licensed real estate broker. The circuit court found that Appellees expended approximately $250,000 annually in advertising, and Timberline Four Seasons did not contribute to that.

In assessing this evidence, the circuit court made a general finding that the evidence showed that Timberline Resort Realty was not owned by nor controlled by Timberline Four Seasons, and thus, Timberline Resort Realty was not an agent under the exclusive control of Timberline Four Seasons with respect to the real estate functions performed by Pat Herlan d.b.a. Timberline Resort Realty. However, the circuit court's order failed to analyze and all but ignored several other key facts demonstrating that Timberline Four Seasons actually maintained some level of control over Timberline Resort Realty and Pat Herlan.

First, evidence was presented to the circuit court that Timberline Four Seasons controlled the operating checking account for the real estate division. Tom Blanzy, the general manager of Timberline Four Seasons, provided the following testimony at trial:

Q: Throughout the past sixteen years of Ms. Herlan's employment, did you have the opportunity to supervise the day-to-day functions of Timberline Resort Realty?

A: I conferred with Ms. Herlan on a fairly regular basis. I would go down to the real estate office maybe three or four times a month. I was a co-signature on the operating account for the operation and so I reviewed some of the expenditures and we talked over—not in a formal way but—some budget issues and things of that nature.

Ms. Herlan also provided the following trial testimony regarding Timberline Four Seasons' financial control:

Q: Okay. Who paid the taxes for Timberline Resort Realty?

A: All of the expenses for the operation were handled out of the operation of the—the rental and sales operation. Any other funds were put into this joint account and we made sure all of the obligations of the realty office and the round house were paid. Then any profits from that was (sic) transferred to the resort and they paid taxes on it and that is the way it has been from the very beginning. As I mentioned to Tom Blanzy and to their attorney and to my attorney in March, it has been very muddy water and I am partly to blame for that.

In addition to this testimony, there was also evidence provided to the circuit court that Ms. Herlan left the accounting records in the Roundhouse upon vacating the property. Additionally, Appellant presented evidence that Timberline Four Seasons paid all of the taxes for the real estate operation. Dr. Reichle, Timberline Four Season's president, testified:

Q: Did Timberline Four Seasons pay the taxes for the Timberline Realty Operation?

A: Yes, all of the divisions of the resort culminate in a payment of the taxes as a whole.

Furthermore, evidence was presented to the circuit court that the employees who worked at the Roundhouse were Timberline Four Seasons employees, not Timberline Resort Realty employees. Dr. Reichle testified:

Q: And as to the employees in that office, whether it be Ms. Herlan or her assistants or any other employees that they might have had, did Timberline Four Seasons Resort Management [Company] Inc. also pay the taxes for those employees, withholding, W–2 and that sort of thing?

A: Yes that was submitted each year as a single tax form including all of the entities including the real estate division[.] [11]

Ms. Herlan also testified that Timberline Four Seasons maintained control over the payroll for the operation:

That is an arrangement we had made with the resort way back when. I had wanted to have our own payroll within the office and the resort said they need to do that because it was good for them to do and they could watch over and oversee what was happening in the real estate office. They were concerned that I would be taking a profit away from them.

Additionally, when Ms. Herlan was asked directly about the nature of her relationship and affiliation with Timberline Four Seasons, she testified:

Q: Okay. So would it be an unfair statement to say that you are a division of Timberline Four Seasons?

A: Yes, it is.

Q: Okay, When would [sic] have become an unfair statement to say?

A: Oh, Lord! It started back in the nineties.

Q: So as of the year 2000 it would have been an unfair statement to say that you are a division of or related to Timberline Four Seasons?

A: Definitely.

However, Appellants provided evidence to impeach Ms. Herlan's statements by providing the court a grant application signed by Ms. Herlan under oath in 2005. Her sworn statement on the 2005 application reads: "Timberline Resort Realty is a vacation home rental *arm of Timberline Four Seasons Resort*" (Emphasis added). This sworn statement was signed five years after Ms. Herlan claims she incorporated Timberline Resort Realty and separated from Timberline Four Seasons. Ms. Herlan testified before the circuit court: "I don't know who wrote this, sir." She claimed that she did not read what the grant application stated, she just signed what her secretary had given her.

11. Additionally, during oral argument of the instant appeal, counsel represented that upon Ms. Herlan and Mr. Dearborn's vacation of the Roundhouse property, the remainder of the employees working in the Roundhouse remained there, as they were largely clerical staff employed by Timberline Four Seasons.

Perhaps the most compelling piece of evidence of an existing agency relationship is a business sign that remained hanging on the wall of the Timberline Four Seasons lodge stating, "Timberline Resort Realty *A division* of Timberline Four Seasons Resort." (Emphasis added). Ms. Herlan testified that the sign had been in place for four or five years. This sign even remained hanging at the time the trial was conduct by the circuit court.[12]

In reviewing all of this evidence in the record together, we find that all of this evidence indicates that Timberline Four Seasons exercised some level of control over the finances, payroll, accounting, taxes and employees of Ms. Herlan and Timberline Resort Realty. Appellants sufficiently demonstrated that the real estate operation did not operate independently of Timberline Four Seasons. Rather, it was treated as a division of Timberline Four Seasons. In light of the fact that Appellants presented this evidence to the circuit court, and thus met their burden of proving that an agency relationship existed, we find that the failure of the circuit court to assess this evidence in making its determination, and its failure to render injunctive relief to Timberline Four Seasons constituted an abuse of discretion.

### B. Retainer of Business Records

Next, Appellants contend that because Ms. Herlan was an agent of Timberline Four Seasons, she owed it a duty of loyalty, and thus she was prohibited from engaging in self-dealing. Appellants assert that Ms. Herlan failed to act in the utmost good faith when she removed all of the business records necessary to the operation of the real estate division upon her departure from the Roundhouse. Conversely, Appellees contend that the *West Virginia Real Estate License Act*, W.Va.Code § 30–40–12 (2002), prohibited her from returning any of the business records she took from the Roundhouse because neither Timberline Four Seasons nor any member of its board had a real estate broker's license.

W.Va.Code § 30–40–12 [2002] provides:

(b) No broker's license shall be issued in the name of a corporation, association or partnership except through one of its members or officers.

(c) No broker's license shall be issued in the name of a corporation, association or partnership unless each member or officer, who will engage in real estate business, obtains a license as a real estate salesperson or associate broker.

*Id.*[13] Ms. Herlan claims that by virtue of this code section, she was not an agent of Timberline Four Seasons, that she owed it no duty, and that she cannot provide it with the business records because to do so would be illegal.

 Upon review of the specific facts and circumstances before us, we find Appellee's argument unconvincing. We have long held that "the first duty of the agent is to be loyal to his trust." *Moore v. Turner,* 137 W.Va. 299, 316, 71 S.E.2d 342, 352 (1952)(*citing* Mechem on Agency 2d. § 1588). "In the

---

**12.** Control may also be inferred from the terms of the 1995–96 employment contract between the parties. See fn 3, *supra.* Appellants contend that after the contract expired, Ms. Herlan stayed in her position performing the same functions as she did under the previous written contracts. Appellees, however, contend that Ms. Herlan always received a salary only for her promotional work, not her brokerage services, even during the period when the contracts were in place. Although we recognize that a written agreement was not in effect at the time of Ms. Herlan's termination in 2007, the language in these contracts is certainly suggestive of the nature of the agency relationship that existed between the parties.

**13.** Until 2002, West Virginia Code § 47–12–1 mandated that

[i]t shall be unlawful for any person, partnership, association or corporation to engage in or carry on, directly or indirectly, or to advertise or hold himself, itself or themselves out as engaging in or carrying on the business or act in the capacity of a real estate broker or a real estate salesman within this State, without first obtaining a license as a real estate broker or real estate salesman as provided for in this article.

West Virginia Code § 47–12–4 also provided that No broker's license shall be issued to a partnership, association or corporation unless each member or officer thereof who will actively engage in the real estate business be licensed as a real estate salesman or associate broker, when and after said broker shall have been granted a broker's license.

conduct of his principal's business an agent is held to the utmost good faith, and will not be allowed to use his principal's property for his own advantage, or to derive secret profits or advantages to himself by reason of the relation of principal and agent existing between him and his principal." Syl. Pt. 1, *Sutherland v. Guthrie*, 86 W.Va. 208, 103 S.E. 298 (1920).

Not only is W. Va.Code § 30–40–12 silent as to who may lawfully possess the brokerage records, but Appellees also failed to cite any authority that Appellants, as the principal, were legally prohibited from having access to the records. Appellants had already hired a replacement for Ms. Herlan at the time of trial. Although neither Timberline Four Seasons nor any member of its board has a real estate broker's license, at the time of trial, it had, via Long Run Realty, Inc., already reached an agreement with another real estate professional to replace Ms. Herlan. Tom Blanzy, Long Run Realty's General Manager, testified:

Q: Has Long Run Realty employed a broker?

A: We have an agreement with Kim Landis who is a broker in the valley.

Q: And what is that agreement, sir?

A: The agreement is to provide brokerage services for sales and rental.

Furthermore, the records at issue were primarily obtained pursuant to Ms. Herlan's agency relationship with Timberline Four Seasons. Thus, Ms. Herlan's retention of the business records was not justified in the law. Accordingly, because the specific facts of this case indicate that an agency relationship existed between the parties, we find that Ms. Herlan owed a duty of loyalty to her principal, Timberline Four Seasons, to leave these records and materials at the Roundhouse upon her departure. Ms. Herlan, as an agent, cannot rightfully use her position to engage in self-dealing at the expense of her principal and we find nothing in our reading of W. Va.Code § 30–40–12 which would sanction such conduct under this set of facts.[14]

### C. Retainer of Telephone Numbers

■ Lastly, the parties dispute the rights to certain telephone numbers placed in the name of Ms. Herlan but advertised as the contact number for Timberline Four Seasons. Appellants contend that although there is no dispute that Ms. Herlan registered the phones at the Roundhouse in her name when she was hired in 1991, she cannot now derive a personal advantage from them because she used that number in performance of her duties as an agent of Timberline Four Seasons. Appellants argue that they stand to suffer prejudice if Appellees are permitted to keep the telephone numbers at issue because it sent out roughly 400,000 brochures last year promoting the telephone numbers. Appellants assert that Ms. Herlan has the numbers and is now benefitting from the advertising of her former principal.

Although this Court is aware of no specific precedent on point in West Virginia for this situation, we find that regardless of how the numbers are registered, based upon the duty of loyalty owed by an agent, it is not prudent for an agent to be permitted to retain the telephone number of her principal upon termination of the agency relationship. Accordingly, because the telephone numbers were registered and utilized by Ms. Herlan as a function of her agency and employment with Timberline Four Seasons, we direct that the telephone numbers be restored to Appellants, for their future use in conjunction with Timberline Four Seasons business.

### IV.

### CONCLUSION

For the foregoing reasons, the July 9, 2007, order of the Circuit Court of Tucker

---

**14.** We wish to make it clear that the holding herein is dependent upon the specific facts and circumstances surrounding this case. Because the record before us provides ample evidence that some form of an agency relationship existed between the parties, we are not compelled to make a specific ruling regarding whether W. Va.Code § 30–40–12 makes this type of business relationship *per se* illegal. That issue is best left for the legislature to clarify. However, we note that it appears counterintuitive, based upon the fact that an agency relationship existed, to interpret our statutory law in such a manner as to prevent Appellants from accessing these records in this case. With that said, the instant opinion should not be construed that we necessarily condone the continued formation of these types of brokerage business arrangements.

County is hereby reversed. The circuit court is directed to enter an order granting Appellant's request for injunctive relief, specifically ordering Appellees to return all applicable business records to Appellants that were taken by Ms. Herlan upon her termination with Timberline Four Seasons, and ordering Appellees to return the subject telephone numbers to Appellants, and such other and further relief as is consistent with this opinion.

**Reversed and Remanded.**