IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0127
_____

FILED

**June 12, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

VALENTINE & KEBARTAS, INC.,
Defendant Below, Petitioner

v.

GARY J. LENAHAN,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Raleigh County
The Honorable Robert Burnside, Jr., Judge
Civil Action No. 13-C-190(B)

REVERSED
_____

Submitted: January 17, 2017
Filed: June 12, 2017

Albert C. Dunn, Jr., Esq.
Bailey & Wyant, PLLC
Charleston, West Virginia
Counsel for the Petitioner

Ralph C. Young, Esq.
Christopher B. Frost, Esq.
Steven R. Broadwater, Jr. Esq.
Jed R. Nolan, Esq.
Hamilton, Burgess, Young &
Pollard, pllc
Fayetteville, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.    "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 1, *Public Citizen, Inc. v. First National Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996).

WALKER, Justice:

Valentine & Kebartas, Inc. ("V&K") appeals the January 15, 2016 Verdict Order of the Circuit Court of Raleigh County. Following a bench trial, the circuit court ruled in favor of Respondent Gary J. Lenahan ("Mr. Lenahan") that V&K violated the West Virginia Consumer Credit and Protection Act ("Act").[1] V&K challenges the circuit court's determination that the volume of telephone calls made by a debt collector to the consumer in this case, absent any other evidence of intent to annoy, abuse, oppress or threaten, is sufficient to establish a violation of West Virginia Code § 46A-2-125(d) (1974). Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, we reverse the circuit court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

V&K is a third-party debt collector who purchased Mr. Lenahan's delinquent consumer account from ADT, a home security system provider. ADT informed V&K that Mr. Lenahan owed $1,349.53 on the account. The facts are undisputed that Mr. Lenahan informed ADT that he denied owing the debt. Similarly, there is no dispute that Mr. Lenahan never notified V&K that he denied owing the debt.

---

[1] W.Va. Code §§ 46A-1-101 through 8-102 (Supp. 2016).

V&K's collection efforts commenced with a March 9, 2012, letter to Mr. Lenahan notifying him of V&K's intent to collect the debt on the ADT account. Mr. Lenahan admitted receiving the letter. Thereafter, V&K made telephone calls to the telephone number provided by ADT for Mr. Lenahan. According to the testimony of Linda Diaz, V&K's Chief Compliance Officer, V&K used a computer referred to as an auto dialer to place the telephone calls.

As Ms. Diaz testified, V&K directs its managers to schedule auto dialer campaigns for selected accounts on a daily basis. The auto dialer is programmed to make telephone calls according to certain parameters such as time of day and number of calls per day or week in compliance with applicable laws.[2] Ms. Diaz further testified that the auto dialer campaigns may be programmed to call during the "prime time" hours of a particular consumer's time zone. Pursuant to V&K policy, managers scheduled auto dialer calls during a consumer's prime time hours all in an effort to comply with the law

---

[2] Ms. Diaz testified that V&K conforms its practices to federal consumer law. For example, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 through -1692p (2012) ("FDCPA"), prohibits a debt collector from communicating with a consumer "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1). The statute further provides that the convenient time to communicate with a consumer, unless established otherwise by the consumer, is after 8:00 a.m. and before 9:00 p.m. local time at the consumer's location. *Id.*

while maximizing the chances of actually reaching the consumer at a time he or she would be home to answer the phone.

Ms. Diaz further testified that a manager cannot schedule the specific time of a call or calls. The exact time the auto dialer places the calls within the parameters set by V&K is chosen randomly by the computer. In the case of Mr. Lenahan, the auto dialer campaigns were programmed not to leave a message.[3] If the call was answered, the auto dialer was programmed to connect a collection agent with the person answering the call. Mr. Lenahan offered no evidence to contradict Ms. Diaz's testimony regarding V&K's process and procedures.

The number of telephone calls placed by V&K to Mr. Lenahan is also not in dispute. Between March 10 and 25, 2012, V&K used its auto dialer to call Mr. Lenahan twenty-two times. Between March 26 and 28, 2012, the auto dialer placed seventeen additional calls to Mr. Lenahan. Beginning on March 29 and continuing through November 17, 2012, the auto dialer attempted 211 more calls to Mr. Lenahan at

---

[3] The trial transcript contains conflicting testimony about whether the auto dialer left one message over the eight-month timeframe at issue here, but this fact, in itself, is not material to our inquiry. The parties do not dispute that Mr. Lenahan did not answer the call.

times after 8:00 a.m. but before 9:00 p.m. on various days, never more than six times per day.   The parties agree that V&K attempted to call Mr. Lenahan 250 times during the eight-month period between March 10, 2012, and November 17, 2012.[4]

Mr. Lenahan testified that the telephone number provided by ADT to V&K had been his cell phone number for twenty years.   During 2011 and 2012, he had encountered significant financial difficulties and was receiving approximately twenty to thirty collection calls each day from various parties.  According to Mr. Lenahan, he made a conscious decision during this time frame not to answer the phone if he thought the call was from a debt collector.  The facts are undisputed that Mr. Lenahan did not answer the 250 telephone calls placed by V&K, kept no record of those calls, and never contacted V&K by telephone or otherwise to contest the debt.

---

[4] Following the 250 attempted telephone calls, the record indicates that three additional phone calls from V&K were answered by Mr. Lenahan on November 17, 19 and 20, 2012.  Mr. Lenahan argued at trial that he informed V&K during one or more of these three phone calls that he was represented by counsel.  He asserted at trial that one or two of the subsequent calls were made in violation of West Virginia Code § 46A-2-128, which among other things limits a debt collector from contacting a consumer once the debt collector received notice that the consumer is represented by counsel.  The circuit court did not rule on this claim and neither party raises it on appeal.  Therefore, we need not address the issue.

Mr. Lenahan filed suit against V&K in March 2013. During the bench trial on February 2, 2015, Ms. Diaz and Mr. Lenahan were the only two witnesses who testified. On May 22, 2015, the circuit court ruled in a memorandum opinion that V&K's unanswered telephone calls to Mr. Lenahan violated West Virginia Code § 46A-2-125(d)(1974). On January 15, 2016,[5] the circuit entered its Verdict Order[6] awarding Mr. Lenahan $75,000 in damages.

In its Verdict Order, the circuit court concluded that the first twenty-two telephone calls to Mr. Lenahan attempted from March 10 through 25, 2012, did not violate West Virginia Code § 46A-2-125. However, the circuit court found that V&K "ramped up its collection campaign" with the seventeen calls placed on March 26, 27 and 28, 2012. As the circuit court explained:

> The Court cannot fathom any possible legitimate purpose that could be served by increasing the volume and frequency of collection calls to a consumer who is known to exercise dominion over the telephone number being called and who has already been informed that [V&K] was collecting a debt by mail. Thus, the only logical conclusion is

---

[5] The record offers no explanation for the eight-month delay between the circuit court's Memorandum Opinion and Verdict Order.

[6] The Verdict Order incorporated the Memorandum Opinion by reference.

that [V&K] increased its volume and frequency of collection calls to Mr. Lenahan in an attempt to harass or oppress him into answering [V&K]'s telephone calls.

Thus, the circuit court ruled that beginning with the first call on March 26, 2012, V&K's 230 subsequent unanswered collection calls to Mr. Lenahan violated West Virginia Code § 46A-2-125. The circuit court awarded Mr. Lenahan a statutory penalty of $326.08 per call for a total of $75,000.[7]

## II. STANDARD OF REVIEW

This Court has established the following standard of review following a bench trial:

> "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 1, *Public Citizen, Inc. v. First National Bank in Fairmont,* 198, W.Va. 329, 480 S.E.2d 538 (1996).

---

[7] The circuit court noted that the minimum statutory penalty of $100, when adjusted for inflation since 1974, would be $475.33. Relying upon Mr. Lenahan's stipulation that in no event would his recovery be more than $75,000, the court assessed a penalty of $326.08 for each of the 230 phone calls for a total of $75,000. The court found that Mr. Lenahan's claims for actual damages, attorneys' fees and costs were moot given the stipulated cap on damages.

Syl. Pt. 2, *Timberline Four Seasons Resort Management Co. v. Herlan,* 223 W.Va. 730, 679 S.E.2d 329 (2009). With these standards in mind, we consider the parties' arguments.

## III.  DISCUSSION

Whether the number of collection calls alone is sufficient to find V&K liable to Mr. Lenahan under West Virginia Code § 46A-2-125(d) (1974) is the issue raised in this appeal and is a matter of first impression. The version of West Virginia Code § 46A-2-125 in effect at the time of the bench trial in this case states as follows:

> No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person to another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> (a)  The use of profane or obscene language or language that is intended to unreasonably abuse the hearer or reader;
>
> (b)  The placement of telephone calls without disclosure of the caller's identity and with the intent to annoy, harass or threaten any person at the called number.
>
> (c)  Causing expense to any person in the form of long distance telephone tolls, telegram fees or other charges incurred by a medium of communication, by concealment of the true purpose of the communication; and
>
> (d) Causing the telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with the

7

intent to annoy, abuse, oppress or threaten any person at the called number.

W.Va. Code § 46A-2-125.[8] We focus our attention on whether the circuit court erred in determining that the volume of V&K's telephone calls to Mr. Lenahan constituted abuse or unreasonable oppression by virtue of "causing a telephone to ring . . . repeatedly or continuously . . . with intent to annoy, abuse, oppress or threaten" under West Virginia Code § 46A-2-125(d).

---

[8] The West Virginia Legislature amended this section of the Act effective June 12, 2015. *See* 2015 W.Va. Acts ch. 63. As a result, subsection (d) now more specifically addresses call volume by prohibiting the following conduct:

> Calling any person more than thirty times per week or engaging any person in telephone conversation more than ten times per week, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number. In determining whether a debt collector's conduct violates this section, the debt collector's conduct will be evaluated from the standpoint of a reasonable person. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after eight o'clock antemeridian and before nine o'clock postmeridian, local time at the consumer's location.

W.Va. Code § 46A-2-125(d) (2015). We decline to consider this amendment because it was not in effect as of the date of the bench trial in this matter. All subsequent references to West Virginia Code 46A-2-125 shall be to the version in effect at the time of the bench trial in this case, which was promulgated in 1974.

Relying solely on the volume of telephone calls placed by V&K's auto dialer to Mr. Lenahan, the circuit court found V&K liable under West Virginia Code § 46A-2-125(d). The circuit court reasoned that V&K "ramped up" its collection campaign beginning with six telephone calls on March 26, five telephone calls on March 27 and six telephone calls on March 28, 2012. Without reference to any evidence other than the number of telephone calls on those three days, the circuit court observed:

> The Court cannot fathom any possible legitimate purpose that could be served by increasing the volume and frequency of collection calls to a consumer who is known to exercise dominion over the telephone number being called and who has already been informed that [V&K] was collecting a debt by mail.

Based on this finding of lack of legitimate purpose, the circuit court concluded that V&K "increased its volume and frequency of collection calls to Mr. Lenahan in an attempt to harass or oppress him into answering" its calls. The circuit court also inexplicably applied its conclusion about the "ramped up" calls on March 26-28, 2012, to the 211 unanswered calls made from March 29 through November 17, 2012.

In support of its conclusion that the alleged "repeated or continuous" call volume is sufficient to prove intent under the Act, the circuit court relied in part upon the decision of the United States District Court for the Southern District of West Virginia in *Ferrell v. Santander Consumer USA, Inc.*, 859 F.Supp.2d 812 (S.D.W.Va. 2012). The *Ferrell* court denied the defendant's motion for summary judgment in a case in which the plaintiffs alleged they received numerous calls after having advised the defendant they

9

had retained counsel regarding a debt owed. *Ferrell*, 859 F.Supp.2d at 816-17. In support of its motion for summary judgment on plaintiff's claims under West Virginia Code § 46A-2-125(d), the defendant contended that there was no evidence that the telephone calls were unreasonably oppressive or abusive or that the telephone calls were placed with intent to annoy, abuse, oppress or threaten. *Id.* at 816. The *Ferrell* court denied the motion and found that there was sufficient evidence to allow a jury to consider the claim.

Petitioner urges this Court instead to rely upon the decision of the United States District Court for the Southern District of West Virginia in *Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495 (S.D.W.Va. 2014). In *Bourne*, the district court granted summary judgment to a defendant where there were no facts in the record to support a finding of intent to annoy, abuse, oppress or threaten. *Id.* at 502-03. The defendant law firm hired to collect debts was mistakenly calling the plaintiff regarding a debt owed by the plaintiff's aunt. *Id.* at 499. Coincidentally, the plaintiff also owed a debt being pursued by the law firm. *Id.* Plaintiff never answered the law firm's calls about his aunt's debt, which were placed by the law firm's auto dialer that did not leave messages. *Id.*

Analyzing other cases in the Southern District of West Virginia denying summary judgment on claims under West Virginia Code § 46A-2-125(d), the *Bourne*

court observed that the cases "involved many more telephone calls *and* other evidence which suggested abuse." *Bourne*, 998 F.Supp.2d at 502 (emphasis added). For example, the court noted a denial of a motion for summary judgment in *Duncan v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 5359698 (S.D.W.Va. 2011) based not only on the volume of telephone calls, but also on evidence that abusive language was used in at least one of the phone calls. *Id.* at 502-03. The *Bourne* court concluded that "[e]ven accepting that twenty-seven phone calls over the course of eight months at normal times of the day could be considered causing the telephone to ring 'repeatedly or continuously' – a proposition that is highly doubtful – plaintiff has failed to establish that [defendant] intended to annoy, abuse, oppress or threaten plaintiff or anyone else." *Id.* In other words, despite the fact that the unanswered calls might suffice to establish the requirement of being placed "repeatedly or continuously," the phone calls alone were not sufficient as a matter of law to establish intent to annoy, abuse, oppress or threaten in that case. *Id.*

The *Bourne* court further noted that several other courts interpreting 15 U.S.C. § 1692d(5),[9] the provision of the "FDCPA" nearly identical to West Virginia

---

[9] This provision of the FDCPA states:

(continued . . .)

Code §46A-2-125(d), have also found that call volume alone absent evidence of other

abusive conduct is insufficient to sustain a claim:

> *Finally, the cases interpreting the analogous FDCPA provision—cases which plaintiff encouraged this court to consult—are even more supportive of defendants' summary judgment motion. These cases generally go as far as asserting that even daily phone calls, without other abusive conduct are insufficient to raise a triable issue of fact for the jury. See Saltzman v. I.C. Sys., Inc.*, No. 09–10096, 2009 WL 3190359, at \*7 (E.D. Mich. Sept. 30, 2009) ("[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages."); *Arteaga v. Asset Acceptance, LLC*, 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (finding that "daily" or "nearly daily" phone calls alone fail to raise an issue of fact for a jury to determine whether the conduct violates § 1692d and § 1692(d)(5)); *Tucker v. CBE*

---

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . .
>
> ***
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d (2012).

*Grp., Inc.*, 710 F.Supp.2d 1301, 1305 (M.D. Fla. 2010) (noting that despite 57 calls over a 20–day period being "somewhat high," the conduct still did not violate § 1692(d)(5) as a matter of law where defendant left six messages, made no more than seven calls in a single day, and did not call back the same day after leaving a message); *Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F.Supp.2d 485 (S.D. Ohio 2012) (finding no FDCPA violation even though debt collector made 30 calls to debtor's phone numbers, one of which was made after the debt collector was informed that the number did not belong to the debtor, and two calls to debtor's roommate in 73 day period); *Katz v. Capital One*, No. 1:09–cv–1059, 2010 WL 1039850 (E.D. Va. March 18, 2010) (15–17 calls, not more than two in a day and not at inconvenient times, after debtor notified debt collector of attorney representation did not violate the FDCPA).

*Bourne*, 998 F.Supp.2d at 503 (emphasis added). As another district court has noted:

A remarkable volume of telephone calls is permissible under FDCPA jurisprudence. *See VanHorn v. Genpact Servs., LLC*, No. 09–1047–CV–S–GAF, 2011 WL 4565477, at *1 (W.D. Mo. Feb. 14, 2011) (finding 114 calls in a four-month period did not violate the FDCPA); *Carman v. CBE Grp., Inc.*, 782 F.Supp.2d 1223, 1232 (D. Kan. 2011) (granting summary judgment in favor of a defendant who placed 149 telephone calls to the plaintiff during a two-month period); *Clingaman v. Certegy Payment Recovery Servs.*, No. H–10–2483, 2011 WL 2078629, at *5 (S.D. Tex. May 26, 2011) (granting summary judgment for a defendant who placed 55 phone calls over three and one-half months).

*Zortman v. J.C. Christensen & Assoc., Inc.*, 870 F.Supp.2d 694, 707 (D. Minn. 2012).

Clearly, the weight of federal authority requires some evidence of intent to establish

liability under the federal equivalent to West Virginia Code § 46A-2-125(d).

13

We agree with the reasoning of these federal courts interpreting a nearly identical statute. Despite the fact that the district court in *Bourne* stated that "the requisite intent to annoy, abuse, oppress, or threaten can be established by the volume of telephone calls or the nature of the telephone conversations,"[10] the *Bourne* court ruled that the volume of unanswered calls in that case did not establish intent in violation of West Virginia Code § 46A-2-125(d). We similarly find that the volume of unanswered calls in this case does not establish intent in violation of West Virginia Code § 46A-2-125(d). Rather than answer any one of the 211 calls made by V&K in compliance with federal law over eight months, Mr. Lenahan remained silent and never informed V&K of the simple fact that he disputed the debt. Accordingly, we find that the circuit court erred as a matter of law in finding that V&K violated West Virginia Code § 46A-2-125(d).

The circuit court gave no apparent consideration to the unrefuted evidence in the record of V&K's intent in placing the auto dialer calls to Mr. Lenahan. Mr. Lenahan acknowledged in his testimony that he had received a letter advising him of V&K's attempt to collect the ADT debt. According to the trial testimony of Ms. Diaz, V&K continued to call Mr. Lenahan in an effort to collect the debt:

---

[10] *Bourne*, 998 F.Supp2d. at 502.

14

. . . . This telephone number [of Mr. Lenahan] was provided by our client in question that we were attempting to collect money owed to a third-party collection agency.

We received the telephone contacts, we attempted to make the telephone calls with no communication, we attempted to reach out to the consumer, your client, in an attempt to collect a debt, and we were never ever told otherwise. We did not have communication advising do not call this number, do not telephone me at this inconvenient or harassing time or any of that nature so, therefore, the attempted telephone calls continued to make contact.

Similarly, the circuit court made no mention of the unrefuted testimony of Ms. Diaz regarding V&K's procedures to assure that its auto dialer placed calls within established limits as to time and volume in compliance with applicable laws. The record is devoid of any evidence contradicting V&K's stated intention to collect a debt. The calls continued because Mr. Lenahan never answered the telephone calls and never informed V&K that he contested the debt.

Rather, the circuit court made an inference of intent to "harass or oppress" based upon its own inability to "fathom any possible legitimate purpose" for V&K's auto dialer placing more calls over a three-day period in the third week of its eight-month collection effort than it placed in the first two weeks. The circuit court surmised that after a certain amount of unanswered calls, a reasonable debt collector should know that the consumer does not want to be contacted. However, the circuit court's inference was based entirely on the volume of calls and no other evidence. Moreover, the circuit court overlooked entirely the unrefuted evidence of V&K's intent to collect the debt.

15

Accordingly, the circuit court's ruling is deficient as a matter of law. Some evidence of V&K's intent to annoy, abuse, oppress or threaten Mr. Lenahan is necessary in order to find liability under West Virginia Code § 46A-2-125(d).

In addition, we note that inquiring into the "legitimate purpose" for placing debt collection telephone calls, and then drawing a negative inference when no legitimate purpose is found, inappropriately relieves the plaintiff of his burden of proof. Relying upon the circuit court's approach, the plaintiff had no burden of proof other than to "perceive" a "ramp up" in the telephone calls, requiring V&K to rebut that perception by justifying the placement of the auto dialer calls. The plain language of West Virginia Code § 46A-2-125(d) does not support this approach; it is the plaintiff's burden to prove intent to annoy, abuse, oppress or threaten.

We further note that Mr. Lenahan's silence alone was insufficient to have imputed knowledge to V&K that it should discontinue the auto dialer calls. Like the ill-advised analysis of whether V&K had a "legitimate purpose" for placing auto dialer calls, it is likewise erroneous as a matter of law to impose a duty on a debt collector to discontinue debt collection efforts based solely on the fact that the consumer does not want to be contacted after a certain period of time that is subjectively known only to the consumer.

16

Based upon the undisputed facts, there is no evidence that V&K intended to annoy, abuse, oppress or threaten Mr. Lenahan in violation of West Virginia Code § 46A-2-125(d). Accordingly, the circuit court erred as a matter of law in finding in favor of Mr. Lenahan in its Verdict Order of January 16, 2016.

## IV. CONCLUSION

For the foregoing reasons, we reverse the January 16, 2016, order of the Circuit Court of Raleigh County.

Reversed.

17