694 S.E.2d 302

**Michelle ISAACS, Plaintiff Below, Appellant**

v.

**Daniel P. BONNER, Defendant Below, Appellee.**

No. 35284.

Supreme Court of Appeals of West Virginia.

Submitted March 31, 2010.

Decided May 6, 2010.

Andrew C. Skinner, Esq., Stephen G. Skinner, Esq., Skinner Law Firm, Charles Town, WV, for the Appellant.

Christopher J. Prezioso, Esq., Luttrell & Prezioso, Martinsburg, WV, for the Appellee.

Darrell V. McGraw, Jr., Esq., Attorney General, Elizabeth G. Farber, Esq., Assistant Attorney General, Charleston, WV, for the West Virginia Division of Labor, Amicus Curiae.

Lonnie C. Simmons, Esq., DiTrapano, Barrett & DiPiero, Charleston, WV, for the West Virginia Employment Lawyers Association, Amicus Curiae.

PER CURIAM:

This wage payment and collection matter is before this Court upon the appeal of Michelle Isaacs, a dental hygienist, from the March 21, 2008, and July 31, 2008, orders of the Circuit Court of Berkeley County, West Virginia, awarding her former employer, Dr. Daniel P. Bonner, $35,504.12 in damages. The award was based upon the Circuit Court's determination, following a bench trial, that Isaacs filed and pursued a fraudulent administrative Request for Assistance against Dr. Bonner for unused, accrued paid vacation leave. The award consisted of $1,016.60 in compensatory damages, $5,000.00 in punitive damages, plus $29,487.52 in costs and attorney fees designated by the Circuit Court as additional punitive damages.

This Court has before it appellant Isaacs' petition for appeal, Dr. Bonner's response, the entire record of the proceedings below and the briefs and argument of counsel. In addition, *amicus curiae* briefs have been filed in this Court by the West Virginia Division of Labor and the West Virginia Employment Lawyers Association.

Upon review, this Court is of the opinion that, under the unambiguous provisions of Dr. Bonner's paid leave policy concerning his

employees, the claim filed and pursued by Isaacs was proper. Therefore, the filing and the pursuit of the Request for Assistance were not fraudulent as a matter of law. Moreover, Dr. Bonner settled the claim with appellant Isaacs, and the matter was closed by the Wage and Hour Section of the Division of Labor. Accordingly, the Circuit Court orders of March 21, 2008, and July 31, 2008, are reversed, and the $35,504.12 damage award is set aside.

Finally, relief upon Dr. Bonner's cross-appeal is denied, and each party shall bear his or her own costs and attorney fees with regard to this appeal and all proceedings below.

## I.

### Factual Background

The appellant, Michelle Isaacs, a registered dental hygienist, worked for the appellee, Dr. Daniel P. Bonner, at his dental office in Inwood, West Virginia, from November 1, 2000, until she left voluntarily on July 14, 2004. The appellant typically worked a four-day work week, eight hours per day.

In late 1979 or early 1980, Dr. Bonner established a written policy for his employees concerning paid vacation leave. The policy provided that there would be no paid leave for the first year of employment, one week of paid leave for the second and third years of employment and two weeks of paid leave for the fourth and subsequent years. The number of days in a week of paid leave was equal to the number of days that an employee was required to work each week. For each day of paid leave, an employee would receive eight hours of pay at the employee's regular rate of pay. For example, under the policy, an employee in the fourth year of employment would be entitled to two weeks of paid leave (a total of eight days, representing two work weeks) multiplied by eight hours per day. The product (sixty-four hours) would then be multiplied by the employee's regular rate of pay. The policy provided that active employees were required to take paid leave in full-day units.

The policy was silent with regard to the accrual of paid vacation leave while on mater-nity leave. The appellant took two maternity leaves while employed by Dr. Bonner. The first maternity leave occurred early in the appellant's employment, and during that leave she was given a full week of paid leave. No paid leave, however, was given to the appellant as to her second maternity leave occurring in her last year of employment. Dr. Bonner testified that the allowance or accrual of paid vacation leave, in relation to maternity leave, was within his discretion. In awarding extra paid leave or giving bonuses to his staff, Dr. Bonner considered employee performance as well as financial need.

The evidence of record indicates that Dr. Bonner's policy concerning paid vacation leave remained unchanged throughout the appellant's employment. In May 2004, the policy was incorporated in a comprehensive office manual or handbook. Subsequently, however, the manual was misplaced and has never been found. Consequently, the paid leave policy in effect during the appellant's employment with Dr. Bonner could not be produced during the proceedings below. The parties, however, agree that the language concerning paid leave pertaining to the appellant was preserved in a revised policy completed after the appellant's separation from employment. That language states:

> We encourage you to take your vacation in one-week blocks. (Vacation time may not be taken in blocks of less than one day.) Unused vacation days may not be carried over to subsequent years. Employees who leave our practice will be paid for unused vacation time accrued for their calendar year, which is calculated from each individual's date of hire.

In addition to the manual, Dr. Bonner, in 2002, began using an accounting software program known as QuickBooks for payroll data. The program routinely produced a pay stub for each employee which included a line for "used" and "available" paid vacation leave. Dr. Bonner, however, did not use the QuickBooks program to track vacation leave. Instead, he kept vacation leave records by hand and, later, by means of a clock-in, clock-out system. As a result, the QuickBooks program printed zeroes on the line designated for "used" and "available" paid vacation

leave. Beginning with the April 23, 2004, payroll, however, information concerning paid vacation leave inexplicably began appearing on the pay stubs of each employee. According to Dr. Bonner, everyone in the office, including the appellant, knew that the information on the pay stubs printed by the QuickBooks program was not accurate.

In her fourth, and last, year of employment, the appellant worked for Dr. Bonner for eight months and fourteen days. During that time, the appellant took three days of paid leave. Nevertheless, when she separated from employment, the pay stub of her final paycheck indicated sixty-four hours of unused paid vacation leave (representing two weeks, or eight days, of accrued leave multiplied by eight hours per day). The final paycheck, however, did not include any payment for unused, accrued paid vacation leave.

## II.

### The Wage and Hour Proceedings

In an attempt to collect her unused vacation pay, appellant Isaacs filed a Request for Assistance form with the Wage and Hour Section of the Division of Labor. Indicating that Dr. Bonner had no written paid leave policy in existence, the appellant alleged that he failed to pay her $1,472 for unused paid leave (representing the sixty-four hours shown on the appellant's final pay stub multiplied by her regular rate of pay of $23 per hour).[1]

Under *W.Va.Code*, 21–5–1 (1987), of the Wage Payment and Collection Act, the term "wages" is defined as including "fringe benefits" which, in turn, includes vacation and personal leave and incentive bonuses. As *W.Va.Code*, 21–5–1(c) (1987), states, in part: "[T]he term 'wages' shall also include then accrued fringe benefits capable of calculation and payable directly to an employee: Provided, That nothing herein contained shall require fringe benefits to be calculated contrary to any agreement between an employer and his employees which does not contradict

the provisions of this article." Syl. pt. 5, in part, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999) (whether fringe benefits have accrued, are capable of calculation, and payable to an employee are determined by the terms of employment and not by the provisions of *W.Va.Code*, 21–5–1(c)).

The appellant's Request for Assistance was assigned to Mary Beth McGowan, a compliance officer with the Wage and Hour Division. McGowan determined that Dr. Bonner owed the appellant forty hours of unused, accrued paid vacation leave for a total of $920 (representing the sixty-four hours, minus twenty-four hours for the three days of paid leave previously taken, multiplied by $23 per hour). By letter dated January 12, 2005, from the Director of the Wage and Hour Section, Dr. Bonner was notified that he owed the appellant $920.

In a letter dated January 21, 2005, Dr. Bonner stated that the appellant, "after calculations, is entitled, at the very most, to 4.20 hours in paid vacation." Dr. Bonner enclosed a check for $96.60 (representing 4.20 hours multiplied by $23 per hour). The letter quoted the following provision of Dr. Bonner's paid leave policy: "Employees who leave our practice will be paid for unused vacation time accrued for their calendar year, which is calculated from each individual's date of hire." As the letter concluded: "If [this] check does not close this case then I request a hearing." Soon after, a subpoena duces tecum from the Division of Labor was issued requesting records from Dr. Bonner covering the appellant's entire period of employment. In response, Dr. Bonner submitted a check in the amount of $920 to conclude the settlement of the claim, and the Wage and Hour Section considered the matter closed.

Dr. Bonner contends that he voluntarily settled the dispute concerning the appellant's accrued leave upon assurances by the Wage and Hour Section that the case would be completely resolved. Appellant Isaacs, how-

---

1. The West Virginia Wage Payment and Collection Act, *W.Va.Code*, 21–5–1 (1987), *et seq.*, is enforced through § 42–5–1 (1990), *et seq.*, and § 42–20–1 (1992), *et seq.*, of the Code of State Regulations, as well as enforced through the State Administrative Procedures Act, *W.Va.Code*, 29A–1–1 (1982), *et seq.*

ever, maintains that the settlement did not resolve the question of liquidated damages.

### III.

### The Circuit Court Proceedings

On March 4, 2005, the appellant filed a *pro se* complaint in the Magistrate Court of Berkeley County, for liquidated damages. The appellant cited *W.Va.Code*, 21–5–4(e) (1975), which provides, in part:

> If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount due, be liable to the employee for liquidated damages in the amount of wages at his regular rate for each day the employer is in default, until he is paid in full, without rendering any service therefor: Provided, however, That he shall cease to draw such wages thirty days after such default.[2]

Dr. Bonner filed an answer contending the matter was settled by the payment and acceptance of $1,016.60 (representing the $96.60 and the $920 checks). In addition, he filed a counterclaim denying any liability to the appellant and alleging that, through the Request for Assistance, the appellant "falsely and fraudulently" claimed that he failed to pay her for unused paid vacation leave. Dr. Bonner's counterclaim sought $5,000 in compensatory damages, plus punitive damages. Appellant Isaacs obtained counsel, both sides sought attorney fees, and the case was removed to the Circuit Court of Berkeley County. *See, W.Va.Code*, 50–4–8 (1978) (providing for removal to circuit court).

The Circuit Court conducted a bench trial in 2007 followed by an order entered on March 21, 2008, dismissing the appellant's suit for liquidated damages and holding in favor of Dr. Bonner on his counterclaim. Finding the appellant's filing for, and pursuit of, unused paid leave to be fraudulent, the Circuit Court awarded Dr. Bonner compensatory damages in the amount of $1,016.60

(representing the $96.60 and $920 previously paid) and punitive damages in the amount of $5,000.00. The Circuit Court also ruled that Dr. Bonner's request for costs and legal fees would be addressed in a subsequent proceeding. The March 21, 2008, order stated:

> Because the Plaintiff was not owed for any unused, accrued days of paid leave at the time of her departure from the Defendant's employ, the Defendant did not owe her any payment for leave in her last paycheck. * * * [T]he Defendant also does not owe her the liquidated damages that the Plaintiff seeks in this civil action. * * * The Court concludes that the Plaintiff took a pay stub record she knew to be erroneous and used it to extract money from the Defendant that she knew he did not owe her. The evidence is clear and convincing that Plaintiff knowingly made a false claim by which she successfully obtained a payment from Defendant that was not owed.

In June 2008, the Circuit Court conducted a post-trial hearing concerning Dr. Bonner's request for reasonable costs and attorney fees, and on July 31, 2008, the Circuit Court awarded him $29,487.52. The $29,487.52 award was in addition to the compensatory and punitive awards granted in the order of March 21, 2008. As the Circuit Court stated:

> Because the Court concludes that the Defendant's prayer for attorney fees should be considered pursuant to its finding of fraudulent conduct, the award sought must be considered pursuant to the prevailing principles governing awards of punitive damages[.] * * * Had the Court considered fees and costs in the initial award, the punitive damages would have been considerably higher, but the Court consciously kept them low so as to accommodate the post-trial proceedings anticipated.

Appellant Isaacs' appeal to this Court was granted on October 28, 2009.

---

**2.** In 2006, the West Virginia Legislature amended the statute to provide for treble damages. As *W.Va.Code*, 21–5–4(e), currently provides in part: "If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount which was unpaid when due, be liable to the employee for three times that unpaid amount as liquidated damages."

## IV.

### Discussion

■ The general standard of review concerning a bench trial conducted by a circuit court is set forth in syllabus point 1 of *Public Citizen, Inc. v. First National Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996), as follows:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Timberline Four Seasons Resort Management Co. v. Herlan,* 223 W.Va. 730, 679 S.E.2d 329 (2009). *See,* Rule 52 of the *West Virginia Rules of Civil Procedure* concerning trials without a jury.

The matter now contested may be resolved by looking at the language of Dr. Bonner's paid leave policy. On the one hand, the policy states that vacation time for active employees "may not be *taken* in blocks of less than one day." (Emphasis added.) On the other hand, the policy states that, upon separation from employment, employees "will be paid for unused vacation *time accrued* for the calendar year, which is calculated from each individual's date of hire." (Emphasis added.) According to Dr. Bonner and the Circuit Court, inasmuch as paid vacation could only be taken or compensated for in blocks of one day, appellant Isaacs was not owed for any accrued hours, equaling less than one day, at the time of her departure on July 14, 2004. In other words, if *time* could not be *exercised* as paid leave, then it is not compensable when an employee separates from employment. Appellant Isaacs contends, however, that where the policy specifies *time,* it means any amount of time, and, under the policy, paid vacation leave was earned in units of time, not in units of days. Moreover, the appellant emphasizes the testimony of Dr. Bonner who stated that the requirement of taking paid leave in full-day increments helped eliminate scheduling problems concerning the office and staff. Consequently, according to the appellant, such a requirement would not be relevant to an employee who leaves the practice permanently.

■ Whether a contract is ambiguous, or how a contract should be interpreted, involves a question of law to be determined by the court. *Berkeley County Public Service District v. Vitro Corporation of America,* 152 W.Va. 252, 267, 162 S.E.2d 189, 200 (1968) (The question as to whether a contract is ambiguous is a question of law to be determined by the court.); *Wood v. Acordia,* 217 W.Va. 406, 411, 618 S.E.2d 415, 420 (2005) (interpretation of contract language is a question of law). In the area of employment law, syllabus point 6 of *Meadows v. Wal–Mart Stores, Inc., supra,* holds: "Terms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment. Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees." Syl. pts. 1 and 2, *Lipscomb v. Tucker County Commission,* 206 W.Va. 627, 527 S.E.2d 171 (1999).

■ In the case to be determined, this Court concludes that the paid leave policy was unambiguous. The provision of the policy requiring the *taking* of vacation by the day and the provision for payment, upon complete separation from employment, for unused vacation *time accrued* are not inconsistent. As the policy made clear: "Employees who leave our practice will be paid for unused vacation *time accrued* for their calendar year, which is calculated from each individual's date of hire." As Dr. Bonner himself stated in the January 21, 2005, letter to the Division of Labor, appellant Isaacs, "after calculations, is entitled, at the very most, to 4.20 hours in paid vacation" i.e., less than a day. Consequently, the ruling of the Circuit Court, that the appellant could only be compensated for unused *full-days* of accrued leave, had the effect of depriving the appellant of accrued vacation time that even Dr.

Bonner acknowledged she had earned. Nothing in the paid leave policy suggested that an employee was required to simply forego compensation for any accrued leave that was less than a day.

Syllabus point 1 of *Cotiga Development Company v. United Fuel Gas Company*, 147 W.Va. 484, 128 S.E.2d 626 (1962), stands for the principle that a valid, unambiguous written instrument is not subject to judicial construction or interpretation "but will be applied and enforced" according to the intent of the parties. Moreover, syllabus point 3 of *Cotiga* holds that "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. pt. 3, *Heitz v. Clovis*, 213 W.Va. 197, 578 S.E.2d 391 (2003).

In this matter, the Circuit Court committed error in altering the plain terms of the paid leave policy by overlooking the provision that departing employees were entitled to be paid for unused, accrued leave in units of *time,* rather than in units of days.

Another aspect of the case overlooked by the Circuit Court was the inaccurate manner of keeping records of accrued leave for Dr. Bonner's staff. Dr. Bonner initially kept paid leave records by hand and, later, by means of a clock-in, clock-out system. At the same time, the QuickBooks software program printed incorrect information concerning paid leave on the employees' pay stubs. In some instances, the pay stubs indicated zeroes for available paid leave, and in other instances, the pay stubs showed sixty-four hours of available paid leave (representing two weeks, or eight days, of accrued leave multiplied by eight hours per day). The appearance on the pay stubs of sixty-four hours, beginning in April 2004, rather than the previous zeroes, was inexplicable. The resulting confusion is not surprising: (1) Dr. Bonner stated that, "at the very most," he owed appellant Isaacs 4.20 hours, (2) the appellant stated that she was owed sixty-four hours, and (3) the Wage and Payment Section of the Division of Labor stated that the appellant was owed forty hours.

The language of *Meadows v. Wal–Mart Stores, Inc.*, set forth above, is compelling: "Terms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment." That language, of course, is a restatement of principles expressed in the legislative and regulatory mandates concerning the Wage Payment and Collection Act. As *W.Va.Code,* 21–5–9(3) (1975), provides: "Every person, firm and corporation shall: ... (3) Make available to his employees in writing or through a posted notice maintained in a place accessible to his employees, employment practices and policies with regard to vacation pay, sick leave, and comparable matters." Furthermore, § 42–5–4.2 of the Code of State Regulations concerning the Wage Payment and Collection Act states that "[t]he written record or records with respect to each and every employee shall contain ... (g) Hours worked each workday and total hours worked each workweek; [and the] (h) Method of calculating the percent of fringe benefits owed to an employee at any given time." In addition, § 42–5–14.1 and 14.2 provide, in part, that "[a]ll employers shall at the time of hire notify their employees ... [of the] method of computing fringe benefits[,] ... [and the] employer shall furnish to each employee an itemized statement of wages[.]"

Although the paid leave policy was unambiguous concerning appellant Isaacs' right, upon leaving the practice, to be paid in units of time for her unused, accrued paid leave, Dr. Bonner failed, throughout the period of the appellant's employment, to comply with the requirements of the Wage and Hour Act for providing accurate information concerning fringe benefits to his employees. The appellant was entitled to an accurate pay stub.

## V.

### Conclusion

Under the unambiguous provisions of the paid leave policy pertaining to Dr. Bon-

ner's staff, the administrative claim filed and pursued by appellant Isaacs was not fraudulent. Appellant Isaacs, the Wage and Hour Section and Dr. Bonner agreed that the appellant was entitled to some amount of accrued leave. The hours appellant Isaacs submitted through the Request for Assistance were the subject of a legitimate dispute. The dispute was precipitated by Dr. Bonner's poor record-keeping practices. The orders of March 21, 2008, and July 31, 2008, are, therefore, reversed, and the $35,504.12 award, consisting of compensatory and punitive damages, is set aside, and judgment is awarded to appellant Isaacs on the counterclaim of Dr. Bonner.

As the record clearly shows, while this matter was pending before the Wage and Hour Section of the Division of Labor, Dr. Bonner responded by paying $1,016.60 for the unused, accrued vacation leave as a complete settlement of the appellant's claim. This Court reinstates the settlement and dismisses the appellant's complaint for liquidated damages.

Each party shall bear his or her own costs and attorney fees with regard to this appeal and all proceedings below. *See, W.Va.Code,* 21–5–12(b) (1975), and syl. pt. 3, *Farley v. Zapata Coal Corporation,* 167 W.Va. 630, 281 S.E.2d 238 (1981), (indicating that attorney fees may be awarded but are not mandatory), and syl. pt. 2, *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986) ("As a general rule each litigant bears his or her own attorney fees absent a contrary rule of court or express statutory or contractual authority for reimbursement.").[3]

Reversed.

---

**3.** Dr. Bonner's cross-appeal concerning the Circuit Court's characterization of his award of at-

torney fees as an element of punitive damages is denied.