# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

**FILED**

**September 24, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0898

**DONALD COTTLE,**
Petitioner Below, Petitioner

v.

**MARY DAVIS,**
Respondent Below, Respondent

---

Appeal from the Circuit Court of Webster County
The Honorable Jack Alsop, Judge
Civil Action No. 13-P-20

**AFFIRMED, IN PART, REVERSED, IN PART,
AND REMANDED**

---

Submitted: September 16, 2015
Filed: September 24, 2015

Donald Cottle
Ceredo, West Virginia
Petitioner, *pro se*

Dan L. Hardway, Esq.
Dan Hardway Law Office PLLC
Cowen, West Virginia
Counsel for Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

"Valid restrictive covenants applying to a residential neighborhood cannot be nullified by changes in the neighborhood's character unless the changes are so radical as effectively to destroy the essential objects and purposes of the neighborhood's original plan of development."  Syl. pt. 1, *Morris v. Nease*, 160 W.Va. 774, 238 S.E.2d 844 (1977).

**Justice Ketchum**:

The petitioner, Donald Cottle ("Cottle"), appeals from the order of the Circuit Court of Webster County denying him relief under Rule 60(b) of the *West Virginia Rules of Civil Procedure* from the circuit court's July 9, 2014, order entered in favor of the respondent, Mary Davis ("Davis"). Cottle is the owner of a parcel within a larger tract of land owned by Davis in Glade District, Webster County. The focus of the controversy concerns a restrictive covenant in Cottle's deed which states that the grantee [Cottle] "shall install no septic or sewage system of any kind, no septic tank or leach bed on the real estate herein conveyed." The circuit court concluded, following a bench trial, that the restrictive covenant is enforceable and that it is perpetual, thereby running with the land.

Upon review, this Court holds that the circuit court abused its discretion in concluding that the restrictive covenant in Cottle's deed is enforceable. Therefore, the ruling of the circuit court upholding the validity of the restrictive covenant in Cottle's deed is reversed, and this action is remanded with directions that the circuit court conduct proceedings to determine whether Cottle's waste disposal system is compliant with applicable State and county health laws.

The rulings of the circuit court on all other issues, including the width and use of a right-of-way across Davis's tract of land, are affirmed.

1

# I. Factual Background

The parties' respective interests in the Glade District property were acquired as follows. In 1970, Terry Eagle Coal Company purchased a fifty acre tract of land in Glade District, and, in 1981, conveyed the tract to Charles Grose. Thereafter, Grose sold parcels from the fifty acre tract to various individuals, and several dwellings have since been built on the original property.

Specifically, in October 1982, Grose conveyed 2.29 acres of the tract to Thomas and Lillian Bailes. The deed granted the Baileses a right of way "to be used in common with others over the residue of the land of which the subject 2.29 acre tract is a part." In addition, the deed stated:

> The grantees only shall have the right to use water from a spring as located on the residue of the tract of which the subject tract is a part and shall further have the right to lay and maintain water lines from said spring to the property herein conveyed. The grantees, by the acceptance of this deed, agree that this right goes only to the grantees and not to their successors and assigns.

In July 1983, Grose sold another parcel from the fifty acre tract to Robert Kamm, Jr. Thereafter, by deeds made in May 1985 and August 1986, Grose conveyed parcels from the tract to Fred and Carol Mays. The latter deed conveyed 1.47 acres to the Mayses and "the right to use in common with others the 30-foot wide right-of-way which runs through the real estate of the grantors as it presently exists for purposes of ingress and egress." Similar to the

deed to the Baileses, the August 1986 deed to the Mayses also granted the right to use the "water spring on the residue of the real estate of the grantors." The evidence during the bench trial indicated that the Mayses are constructing a home on their property.

On December 21, 1989, Grose conveyed 1.001 acres of the tract to Cottle, "subject to all exceptions and reservations contained in prior deeds in the chain of title to this tract or parcel of land." As with the other grantees, Cottle was granted the right to use the existing right-of-way for ingress and egress. The deed to Cottle, however, contained a restrictive covenant. The covenant states that Cottle "shall install no septic or sewage system of any kind, no septic tank or leach bed on the real estate herein conveyed." The other parcels conveyed out of the original fifty acre tract do not contain this restrictive covenant.

Finally, on April 12, 1990, Grose conveyed the remaining land in the fifty acre tract, *i.e.*, the larger tract, to Frank Davis (since deceased) and Mary Davis. The conveyance was made subject to "all exceptions and reservations as may be contained in prior deeds of record." The conveyance did not contain a restrictive covenant prohibiting septic or sewage systems. Ms. Davis has a permanent home on her property. The right-of-way, currently known as Mountain Dog Road, extends across Davis's property and, in a westerly direction, to a road in the Monongahela National Forest.

The appendix record indicates that Cottle is not a permanent resident on his 1.001 acre parcel. Moreover, the nature of the structure, or dwelling, Cottle placed there following his purchase is unclear. Although he asserts that he has a home under construction on the parcel, the evidence at the bench trial described the structure as a hunting camp, or cabin, for the use of Cottle and his guests. It is undisputed, however, that Cottle was granted a Well Permit from the West Virginia Department of Health and Human Resources in April 2007.

In May 2013, relations between Cottle and Davis deteriorated, primarily due to Cottle's use of the right-of-way. The controversy involved a number of matters: the locking of a gate across the right-of-way; the width of the right-of-way; and the presence along the right-of-way's edge of various trees and a tool trailer.

## II. Procedural Background

On September 16, 2013, Cottle filed a *pro se* complaint in the Circuit Court of Webster County alleging that Davis was interfering with his use of the right-of-way. Davis filed an answer and counterclaim. The counterclaim alleged that Cottle had installed a septic or sewage system on his property "in violation of the covenants in his deed and county and state sanitary laws and regulations." Davis asked the circuit court to enjoin Cottle from maintaining any septic or sewer system on his property.

4

The circuit court conducted a bench trial on April 29, 2014. Cottle was *pro se*, and Davis was represented by counsel. The evidence presented focused on the right-of-way controversy. Very little information was elicited concerning the septic system issue. Although Cottle described having an outhouse or pit privy on his parcel, he denied having a leach bed or any kind of septic disposal system. Cottle maintained that he had a right to install a septic system, subject to compliance with State law. During the trial, he requested that he be permitted to telephone George Clutter, a Registered Sanitarian of the Webster County Health Department, who Cottle had previously contacted concerning the requirements for the installation of a septic system on his parcel. Cottle's request to make the telephone call was denied.

On July 9, 2014, the circuit court entered a final order. The order was adverse to Cottle with regard to the gate across the right-of-way and the tool trailer (which belongs to Davis), neither of which was found to interfere with Cottle's right of ingress or egress. With regard to the gate, the evidence revealed that the gate was there when Cottle purchased his 1.001 acre parcel and that Cottle has a key to the lock. The order, however, was favorable to Cottle in determining that the width of the right-of-way is thirty feet, rather than twelve feet, and that the trees in question should be cleared away.

5

The circuit court ruled against Cottle on the septic system issue, holding that the restrictive covenant in Cottle's 1989 deed is clear and that any septic disposal system currently on Cottle's property must be removed. The final order stated:

> The Court is of the opinion that the evidence of record and applicable law supports a finding that the Petitioner's installation of a septic system violates the express covenant within his Deed prohibiting the same. * * *

> The Court finds the language in the Petitioner's Deed to be quite clear. As a basis of the bargain for the Petitioner's purchase, Charles R. Grose requested and the Petitioner expressly agreed not to build a septic system of any kind on the real estate inevitably acquired. Further, the language of the Petitioner's Deed in this regard does not impose a limitation on the restrictive covenant. More specifically, there is no wording or phrasing within the Deed that would indicate the restrictive covenant could be disregarded if certain events took place or failed to occur, such as, Mr. Grose failing to build the camp, Mr. Grose transferring the remaining tract of land, or if the natural spring ceased production or the water became undrinkable.

The final order concluded by stating that the restrictive covenant in Cottle's deed is perpetual, rather than personal, and, therefore, runs with the land.

Thereafter, Cottle filed a Motion to Withhold Judgment and a Motion to Follow Webster County Health Department Recommendations. Seeking to invalidate the restrictive covenant because of his need to maintain a septic disposal system, Cottle alleged that on June 25, 2014, Registered Sanitarian George Clutter inspected Cottle's property and determined that the property required an approved septic disposal system. Cottle asserted in the motions

6

that the absence of an approved system constituted a health risk that could compromise ground water safety in the area.

The circuit court conducted a non-evidentiary hearing on the motions and treated them as a motion for relief under Rule 60(b) of the *West Virginia Rules of Civil Procedure*. The circuit court entered an order denying relief on September 22, 2014.[1] Cottle's appeal to this Court followed.

### III. Standards of Review

The standard of review concerning a bench trial conducted by a circuit court is set forth in syllabus point 1 of *Public Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996), as follows:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

[1] The September 22, 2014, order did not discuss the evidence of record or cite any State regulations concerning septic systems. Rather, the order stated that Cottle failed to allege any grounds for relief under Rule 60(b), such as mistake, inadvertence, excusable neglect, unavoidable cause or newly discovered evidence.

7

*Accord* syl. pt. 1, *Isaacs v. Bonner*, 225 W.Va. 460, 694 S.E.2d 302 (2010). *See* Rules 39(b) and 52 of the *West Virginia Rules of Civil Procedure* concerning trials without a jury.

Moreover, syllabus point 5 of *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974), holds: "A motion to vacate a judgment made pursuant to *Rule* 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. pt. 1, *Builders' Service and Supply Company v. Dempsey*, 224 W.Va. 80, 680 S.E.2d 95 (2009); syl. pt. 1, *Fernandez v. Fernandez,* 218 W.Va. 340, 624 S.E.2d 777 (2005).

## IV. Discussion

Cottle's appeal focuses almost entirely on the restrictive covenant in his deed which states that he "shall install no septic or sewage system of any kind, no septic tank or leach bed on the real estate herein conveyed." Cottle's petition for appeal makes no mention of Davis's tool trailer, and he addresses in a cursory manner the circuit court's ruling concerning the locking of the gate across the right-of-way. We, therefore, affirm the final order, and the denial of Rule 60(b) relief, regarding the tool trailer and the gate.[2]

---

[2] *See Farmer v. Knight*, 207 W.Va. 716, 722, 536 S.E.2d 140, 146 (2000) (This Court will decline to address an issue only casually mentioned in a brief); *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) (Casual mention of an issue in a brief is insufficient to preserve the issue on appeal).

(continued...)

8

The circuit court determined that the restrictive covenant is enforceable solely because the language in Cottle's 1989 deed is clear and formed a basis for his purchase. *See* syl. pt. 1 *McDonough, Co. v. E. I. DuPont DeNemours & Co., Inc.*, 167 W.Va. 611, 280 S.E.2d 246 (1981) ("Parties are bound by general and ordinary meanings of words used in deeds.). *Accord* syl. pt. 8, *Faith United Methodist Church and Cemetery of Terra Alta v. Morgan*, 231 W.Va. 423, 745 S.E.2d 461 (2013). The circuit court, however, did not make findings with regard to the type of cabin, or dwelling, Cottle currently has or intends to build on his 1.001 acre parcel; nor did the circuit court fully consider the extent the original fifty acre tract has changed over the years.

---

[2](...continued)

In any event, the evidence revealed that Davis locked the gate across the right-of-way from time to time for security purposes. Cottle argued that the locking of the gate constituted an unreasonable burden on his right of ingress and egress. Nevertheless, in the final order entered on July 9, 2014, the circuit court held: "[Cottle] admitted that he has a key to the lock and, therefore, the Court cannot reasonably conclude that when locked, the gate imposes an unreasonable burden upon or materially interferes with [Cottle's] access to the right of way or his property." Moreover, the brief filed by Davis in this Court notes: "Keys were available from [Davis] and it appears that all who wanted one had one, including the local emergency services." Accordingly, Cottle's assignment of error concerning the gate is without merit. *Cf. Weikle v. Bolling*, No. 12-0549 (W.Va. Supreme Court, June 24, 2013) (memorandum decision) (gate to be left open under unique facts of the case).

Other assignments of error not adequately addressed and without merit are: (1) whether Cottle was entitled to certain prescriptive easements across Davis's property in addition to the right-of-way, (2) whether he was entitled to default judgment and (3) whether he was denied discovery.

9

In *Wallace v. St. Clair*, 147 W.Va. 377, 127 S.E.2d 742 (1962), this Court affirmed the enforcement of a restrictive covenant which had the effect of prohibiting eight students from rooming in a dwelling in a neighborhood developed exclusively for residential purposes. The neighborhood was in the vicinity of Marshall University in Huntington, West Virginia, and this Court observed that there had not been a change in the character of the neighborhood sufficient to constitute an abandonment of the restriction. 147 W.Va. at 401, 127 S.E.2d at 758. Nevertheless, the opinion in *Wallace* acknowledged that a restrictive covenant may not be sustainable where it is contrary to the public good or where it unreasonably and materially impairs the beneficial enjoyment of the property. 147 W.Va at 387-88, 127 S.E.2d at 750.

*Wallace* was later cited in *Allemong v. Frendzel*, 178 W.Va. 601, 363 S.E.2d 487 (1987), wherein this Court recognized "the commonly accepted legal proposition that changes in a neighborhood's character can nullify restrictive covenants affecting property within the neighborhood." 178 W.Va. at 606, 363 S.E.2d at 492. However, in *Allemong*, this Court upheld a restrictive covenant prohibiting the sale of alcoholic beverages on the Frendzels' parcel. Affirming an award of injunctive relief in that regard, this Court rejected the Frendzels' assertion that commercial properties in the general vicinity of the restricted parcel had significantly changed the residential character of the immediate area.

10

*Allemong*, thus, stands for the general principle that a restrictive covenant intended to preserve the character of a neighborhood may be enforced by a trial court, "provided that changes in the neighborhood's character are not so radical as to destroy the essential objects and purposes of the neighborhood's original plan of development." 178 W.Va. at 606-07, 363 S.E.2d at 492-93. In setting forth that principle, this Court, in *Allemong*, restated syllabus point 1 of *Morris v. Nease*, 160 W.Va. 774, 238 S.E.2d 844 (1977), which holds: "Valid restrictive covenants applying to a residential neighborhood cannot be nullified by changes in the neighborhood's character unless the changes are so radical as effectively to destroy the essential objects and purposes of the neighborhood's original plan of development." *See Tx Far West, Ltd. v. Texas Investments Management, Inc.*, 127 S.W.3d 295, 306-07 (Tex. Ct. App. 2004) ("A court may refuse to enforce a restrictive covenant if there has been such a change of conditions that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant."); *Burnett v. Heckelman*, 456 N.E.2d 1094, 1097 (Ind. Ct. App. 1983) (Restrictive covenants are not favored, and whether there has been a radical or extreme change in the use of the property and its surrounding area depends on the equities of the situation.); *Owens v. Camfield*, 614 S.W.2d 698 (Ark. Ct. App. 1981) (Various grounds to cancel a restrictive covenant include changes in the conditions surrounding the property, as to destroy the property's value for the purpose originally intended by the restriction.). *See generally* John W. Fisher, II, *The Evolution of Restrictive Covenants in West Virginia*, 100 W.Va. L. Rev. 55 (1997).

Here, the evidence demonstrates a radical change in the character of the fifty acre tract since its purchase by Grose, in 1981, from Terry Eagle Coal Company. Under Grose's ownership, the tract was a remote farm upon which Grose intended to construct some type of camp. The camp was never constructed, and, in 1990, the bulk of the tract was conveyed to Davis who now has a permanent home on the property. Before 1990, Grose made a number of mesne conveyances to others, including the 1.001 acre parcel to Cottle in 1989. Several dwellings have been built on these parcels. Although the appendix record does not show that the out-conveyances from the original tract were made pursuant to a formal subdivision plan, a right-of-way was established for the benefit of the owners of the various parcels, and electric service is now available. Both the Baileses and the Mayses have the right to use water from the spring. The Baileses have the right to lay and maintain water lines from the spring and the Mayses are building a home on their parcel. Cottle has obtained electric service and a Well Permit.

The appendix record further shows that the restrictive covenant, *i.e.*, that Cottle "shall install no septic or sewage system of any kind, no septic tank or leach bed on the real estate herein conveyed," appears solely in Cottle's deed and not in the deeds of the other property owners. The restriction is not reciprocal. It was ostensibly placed in Cottle's deed for the benefit of the surrounding parcels, yet no similar restrictive covenant appears in the deeds of others for the benefit of Cottle. The only explanation suggested by the parties is the

proximity of Cottle's parcel to the spring. Cottle asserts, however, that his parcel is not within any prohibited distance from the spring and that the spring has been abandoned and its water is not usable.

Cottle's use of his 1.001 acre parcel, on which he has an outhouse or pit privy, includes bringing guests to his property from time to time. He asserts that the restrictive covenant is unenforceable because it interferes with the development of his parcel, its use, and its alienability. Cottle has consistently expressed a willingness to comply with applicable State and county health laws.

In his Motion to Withhold Judgment and a Motion to Follow Webster County Health Department Recommendations, Cottle alleged that on June 25, 2014, Registered Sanitarian George Clutter inspected Cottle's property and determined that the property required an approved septic disposal system. Cottle asserted in the motions that the absence of an approved system constituted a health risk that could compromise ground water safety in the area. Specifically, following the inspection, Clutter stated in a letter to Cottle that Cottle did not have a legally approved septic system. The letter cited Title 64, Series 9, of the *West*

13

*Virginia Code of State Rules*[3] and made reference to Cottle's Well Permit. Ordering Cottle

to remedy the situation, the letter states in part:

> On June 25, 2014 I visited the above described property and found that no approved septic disposal system existed on sight. *This lack of septic disposal is causing a health risk* that could compromise ground water safety in that area. West Virginia Code 64 CSR 9 requires that any dwelling with running water must have a legal means of disposing of septic waste including so called grey water. This property is serviced by a legal well permitted on April 17, 2007. You are hereby *ordered* by the Webster County Health Department to find a legal and permanent remedy to correct this problem.

(Emphasis added)

Given the changes in the fifty acre tract outlined above, this Court is of the opinion

that the restrictive covenant in Cottle's 1989 deed is unenforceable. However, that does not

mean that the septic system Cottle has in place, or proposes to install, is in compliance with

State and county health laws and regulations. That is a matter to be resolved by the circuit

court on remand.

---

[3] Cottle purchased his parcel in 1989, and the rules then in effect were located in W.Va. C.S.R. §§ 64-9-1 to 64-9-16 (1983), entitled "Sewage System Rules" of the West Virginia Department of Health. The amended version of the rules is located in W.Va. C.S.R. §§ 64-9-1 to 64-9-14 (1998), entitled "Sewer Systems, Sewage Treatment Systems, and Sewage Tank Cleaners" of the West Virginia Division of Health. Both versions include "cabins" within the definition of "dwellings," and both versions refer to "privy vaults" within the definition of "sewage tank."

## V. Conclusion

The July 9, 2014, order of the Circuit Court of Webster County, and the denial of relief under Rule 60(b), upholding the validity of the restrictive covenant constitute an abuse of discretion and are reversed, and the restrictive covenant is stricken from Cottle's 1989 deed. This action is remanded to the circuit court for proceedings to determine whether Cottle's current, or proposed, waste disposal system is compliant with applicable State and county health laws and regulations. The rulings of the circuit court on all other issues are affirmed.[4]

---

[4] A remaining assignment of error before this Court is Cottle's claim of a right to access a one hundred year old cemetery known as the Bennett-Williamson Cemetery located on Davis's property. Cottle stated that he has been caring for the cemetery for a number of years and wants to continue to do so. Davis revoked Cottle's permission to visit the cemetery and contends that he is, therefore, prohibited from visiting the site pursuant to *W.Va. Code*, 37-13A-1(a) [2011], *et seq.*, which provides that only an "authorized person" may visit a cemetery or grave site located on privately owned land, where no public access is available. The phrase "authorized person" is defined in *W.Va. Code*, 37-13A-2(1) [2011], to include (1) a family member, close friend, or descendant of a deceased person, (2) a cemetery plot owner, (3) a person who has written permission to enter the site from a family member or descendant of a deceased person or (4) a person engaged in genealogy research.

During the bench trial, the circuit court granted Davis's motion for judgment as a matter of law with regard to Cottle's claim of access to the cemetery. The circuit court upheld that ruling in the July 9, 2014, final order.

We find that the circuit court ruled correctly. Concluding that Cottle is not an "authorized person" under the statute entitled to access the cemetery, the circuit court stated:

> Through witness testimony, the cemetery is described as a small
> area, appearing to have smooth rocks or stones marking two unnamed

(continued...)

15

**Affirmed, in part, Reversed, in part, and Remanded**.

---

[4](...continued)
graves.  Testimony indicated that folklore suggests the stones are graves, however, testimony further indicated that it is uncertain who, if anyone, is buried at the alleged grave site.  Additionally, the Petitioner admitted that he could not be related to any individual buried on the site nor did he present evidence that he was conducting genealogical research.  *  *  *

First, there is nothing upon the record before this Court that would indicate who, if anyone, is buried at the grave site and therefore, absent such information, there is no plausible way for [Cottle] to claim he is a family member, close friend, or a descendant of a deceased person buried therein.  *  *  *  Second, it is undisputed that [Cottle] is not a plot owner at the cemetery.

16