# CHARLESTON.

JOHN C. SUTHERLAND *et al.* v. W. M. GUTHRIE.

Submitted April 14. 1920.   Decided April 20, 1920 .

1. PRINCIPAL AND AGENT—*Agent Cannot Use Principal's Property for His Own Advantage.*

In the conduct of his principal's business an agent is held to the utmost good faith, and will not be allowed to use his principal's property for his own advantage, or to derive secret profits or advantages to himself by reason of the relation of principal and agent existing between him and his principal. (p. 209).

2. BROKERS—*Broker for Sale of Land Retaining Excess Above Authorized Price Must Account.*

Where an agent for the sale of real estate upon commission sells the same for an amount in excess of that at which he is authorized to make sale, and provides for the payment of such excess by the purchaser to him instead of to his principal, he will be required to account to his principal for such secret profits upon discovery of the same. (p. 209).

3. SAME—*Agent to Sell Who Attempts to Retain Excess Above Authorized Price Forfeits Commissions.*

Where an agent makes sale of real estate entrusted to him for that purpose for a sum in excess of that for which he is authorized to make sale, and attempts to secure the payment of such excessive amount to himself instead of to his principal, in an action against the principal for his commissions he will be denied recovery. By his conduct in attempting to deprive his principal of the full benefit of the contract of sale he forfeits his right to compensation for his services. (p. 210).

Error to Circuit Court, Kanawha County.

Action by John C. Sutherland and others against W. M. Guthrie. Judgment for plaintiffs, and defendant brings error.

*Reversed and judgment for defendant.*

*John T. Simms,* for plaintiff in error.
*A. A. Lilly,* for defendant in error.

RITZ, JUDGE:

On the 17th of April, 1917, the defendant W. M. Guthrie executed to the plaintiffs a writing constituting them his exclusive agents for the period of forty days for the purpose of making sale of a tract of land owned by him, containing a little more than sixteen acres, at the price of one thousand dollars per acre, agreeing therein to pay said agents a commission of five per centum on the purchase price should they bring a purchaser, or be instrumental in effecting a sale. Shortly thereafter the plaintiffs negotiated a sale of the land at a price in excess of one thousand dollars per acre, and entered into a contract with the prospective purchaser reciting their authority from their principal, and providing that the prospective purchaser should take over the property under their agency, and pay to Guthrie, the owner, one thousand dollars per acre, less their commission of five per cent., and pay to the plaintiffs a lump sum of twenty-five hundred dollars, a secret profit of about seventeen hundred dollars in excess of the commissions to which they would have been entitled. Both the purchaser and the plaintiffs notified Guthrie that a sale had been made, and called upon him to make a deed. A survey of the property was made, the exact acreage ascertained, and Guthrie executed a deed conveying the same with special warranty of title.    In the agency contract Guthrie agreed to make title with covenants of general warranty, and the purchaser declining to receive the deed with covenants of special warranty, and Guthrie declining to make one with the covenant stipulated for, the sale was not consummated.    Plaintiffs thereupon brought this suit for the purpose of recovering their commissions at the rate of five per cent. upon the purchase price, and submitted the case to the court in lieu of a jury upon an agreed statement of facts.    The court found for the plaintiffs upon this statement and rendered judgment accordingly, to review which this writ of error is prosecuted.

It is apparent from the statement made above that plaintiffs attempted to use their agency contract in this case for the purpose of making for themselves profit in excess of that provided

to be paid to them by the terms of the contract. Their duty to their principal required that they exercise their very best efforts in his behalf, and secure for him the largest price obtainable for his property, not for the purpose of giving to themselves any excess which might be procured above the amount for which they were authorized to sell, but for the purpose of getting for their principal all that the property would bring in the market. It is well established that an agent will not be allowed to deal with the property of his principal for his own benefit, and it is uniformly held that where an agent for the sale of property, or for the purchase of property, makes secret profits in addition to the compensation to which he would be entitled under the terms of the contract, he must surrender such profits to his principal, and if he fails to do so the principal may recover the same. 21 R. C. L., Title, "Principal and Agent" § 10; Mechem on Agency, §§1190 and following; 2 C. J. p. 760; *Grumley*. v. *Webb,* 44 Mo. 444. 100 Am. Dec. 304; *Simons* v. *Vulcan Oil & Mining Co.,* 61 Pa. St. 202; 100 Am. Dec. 628; *United States* v. *Carter,* 217 U. S. 286; *Trice* v. *Comstock,* 121 Fed. 620, 61 L. R. 176; *Tyrrell* v. *Bank of London,* 10 H. L. C. 26, 2 E. R. C. 496 ; *Andrews* v. *Ramsey & Co.,* 1903, 2 K. B. 635, 5 British R. C. 184. These authorities and the many others there cited by the courts in support of their opinions clearly establish the proposition of law that if the sale in this case had been consummated, and the plaintiffs had secured the seventeen hundred dollars of secret profits in addition to the compensation provided in their contract, they would not be allowed to retain the same, but would have to account to their principal for it. They could not speculate with their principal's property for their own benefit, and this is not upon the principle that the owner of the property is damaged, and has not received as much as he is willing to take, but is based upon that other principle requiring those standing in the relation of principal and agent, or in any other position of trust, to act with the utmost good faith toward those whose business they are charged with conducting.

What is the effect of such an arrangement upon the compensation to which the agents are entitled? Must they not only surrender the secret profits, but also lose the compensation to which they would otherwise be entitled under the contract? To

allow them to receive the commission provided by the contract even when their fraud and breach of faith has been discovered would put no penalty upon such conduct. No agent would be deterred by the consequences of his act from utterly disregarding the rights and interests of his principal. If the agent knew that no penalty would be visited upon him after his perfidy was discovered there would be no motive for him to deal honestly except that which might be dictated by his own moral sense, and unfortunately in our human relations this deterrant has not been found sufficient to prevent those engaged in business from resorting to ways devious in their nature for the purpose of securing improper advantages of those who have entrusted their property and interests to them. The policy of the law is to put the faithful, honest servant in a little different class from the one who has been unfaithful to his trust, and it seems to be uniformly held that where an agent so manages his principal's business as to secure to himself profits or advantages to which he is not entitled under his contract of agency he will not only be required to surrender to his principal such advantages, but he will likewise be denied the right to receive the compensation to which he would have been entitled had he been honest and faithful in the performance of his duties. It may be said that the result of this doctrine would be to deny compensation for work actually performed, and such is the case, but it is also true that when one placed in the position of an agent takes the chance of deceiving his principal, and securing a larger part of the profits than he is entitled to, he must be willing to forfeit, in case he is discovered, even that to which he would otherwise be entitled. This doctrine is laid down by Mechem on Agency at § 1588 as follows: "As has been already seen, it is often said that the first duty of the agent is to be loyal to his trust, and a number of rules have been already stated whose purpose is to insure the performance of that duty. Certain of these rules have been designed, not merely to give a remedy for actual wrongdoing, but to remove as far as possible all temptation to wrongdoing. This duty of loyalty, as has been seen, imposes upon the agent the obligation to protect the interests of his principal, to see to it that his own interests or the interests of any one else whom he represents, shall not conflict with his principal's interests, to

make no profit for himself at his principal's expense, to render true and honest accounts, to disclose all information coming to him and seeming to be necessary for his principal's protection, and, generally, to render to his principal a disinterested and loyal service. Among the other measures designed to secure the performance of this duty is the denial of compensation where the duty has not been observed; it is often said that a loyal performance is a condition precedent to the right to recover compensation, and it has been held in many cases that, where the agent is unfaithful to his trust and abuses the confidence reposed in him, he will not be entitled to any compensation for his services."

See also 2 Ency. Law & Practice, 1121; 2 C. J. 765.

It may be interesting to review briefly a few of the many cases illustrating this principle.

In the case of *Hahl* v. *Kellogg,* 42 Tex. Civ. App. 636, 94 S. W. 389, a broker was employed to sell a thousand acres of land at a commission of one dollar per acre. He made a sale of the land for $29,500.00, but reported to his principal that he had sold it for $22,000.00, and the principal agreed to accept this amount providing it was net to him. He was advised that he would receive net the $22,000.00, the agent's compensation being taken care of by the purchaser. Upon the discovery of the fact that the agent had received seventy-five hundred dollars in excess of the amount for which he had accounted to his principal, he was required to account for the whole thereof, and was denied the compensation of one dollar per acre agreed upon in the contract.

In *Andrews* v. *Ramsey & Co.,* 1903, 2 K. B., 635, 5 British R. C. 184, it was held, Lord Chief Justice Alverstone delivering the opinion of the court, that where an agent to sell property had made a sale thereof, and by an arrangement with the purchaser received a secret profit in addition to the price accounted for by him to the principal, he would, upon discovery of this fact, be compelled to account to the principal for such secret profit, and would not be allowed to recover the compensation agreed upon for his services.

In *Martin* v. *Bliss,* 57 Hun. 157, where a broker employed to sell real estate secured a purchaser at the price at which he was authorized to sell, but after securing the purchaser at this price

unsuccessfully attempted to induce the principal to accept a less price in order that he, the broker, might make a secret commission, upon the discovery of this fact it was held that because of his unsuccessful attempt to deceive his principal he was not entitled to receive even the commission provided by the contract.

So in the case of *Vennum* v. *Gregory,* 21 Iowa, 326, agents were employed to purchase cattle and, having made purchase of certain cattle represented to their principal that they had paid therefor a sum in excess of the actual purchase price, and collected from him such excessive amount. Upon discovery of this fraud it was held that the principal was entitled to recover back not only the amount collected from him in excess of the purchase money, but the compensation paid to the agents for their services as well.

In *Collins* v. *McClurg,* 1 Colo. App. 349, agents were employed to make sale of certain real estate, the price being fixed at fourteen thousand dollars. They made sale of the property at sixteen thousand dollars, and secured the owner to make a conveyance thereof upon accounting to him for only fourteen thousand dollars, upon which sum he paid them commissions. Upon the discovery of their fraudulent conduct they returned to him the commissions paid upon the fourteen thousand dollars, but declining to return the two thousand dollars secret profits, in a suit brought to recover the same it was held that the owner of the property, the principal, was entitled to recover this two thousand dollars, and that the agents were not entitled to any abatement therefrom because of compensation for their services.

In *Shaffer* v. *Blair,* 149 U. S. 248, the facts were that two parties had entered into an arrangement by which lands were to be bought for resale at a profit. One of the parties furnished all of the money and the other party was to carry on the business, the agreement being that the party carrying on the business should receive five percent. commissions on all sales made by him, after which all monies received should be deposited in a bank to be paid to the party furnishing the money until he had been reimbursed his advancements, after which time such property as remained would be divided between the parties, sixty per cent. to the party furnishing the money, and forty per cent. to the party carrying on the business. It developed that the

party in charge and carrying on the business secured advancements to be made by the other party for the purchase of property somewhat in excess of the price actually paid therefor. Upon discovery of this fraud it was held that he would have to account for the money so advanced in excess of the amounts actually paid for property purchased, and also that because of his conduct in this regard he would not be entitled to receive the five per cent. commissions stipulated to be paid him for his services.

In the case of *Wadsworth* v. *Adams,* 138 U. S. 380, it appeared that Adams was the owner of five one hundred thousand dollar promissory notes, and being badly in need of money he entrusted these notes to an agent, authorizing their sale for $380,000.00, and agreeing to give such agent ten thousand dollars in case he succeeded. The agent took the notes to New York and offered them to a party for $380,000.00, which the prospective purchaser declined to give, but advised that he would give $350,000.00 for the notes. The agent advised that he was not authorized to accept that, but would telegraph the offer to his principal. Before receiving the answer from his principal he asked the prospective purchaser what he would do in case the principal refused to accept the $350,000.00 offer, and the prospective purchaser advised that if the offer was refused he would give $380,000.00 for the notes. After the agent received this information a communication was received from the principal authorizing their sale at $350,000.00, but this acceptance was made by the principal in ignorance of the fact that the prospective purchaser was willing to give $38,000.00 in case he could not get them for $350,000.00. It was held that the agent in accepting $350,000.00 for the notes violated his duty to his principal, knowing that he could get $30,000.00 more, and he was denied the right to recover his compensation of $10,000.00.

In the case of *Jeffries* v. *Robins,* 66 Kan. 427, the owner of land entrusted it to an agent for sale, fixing the price of two thousand dollars. The contract provided for certain commissions to be paid in case the sale was made. The agent sold the land for $2800.00, and received $200.00 in cash from the purchaser. The other $2600.00 was paid to the owner and the agent brought suit to recover $600.00, the amount received in excess

of the price at which the owner was willing to sell, claiming
that he was entitled to this excess for his services. But the
court held that this amount belonged to the principal, and that
inasmuch as the agent had retained $200.00 which was paid to
him at the time of the sale, and did not account for it, as it was
his duty to do, he would not be entitled to receive any compensa-
tion for his services.

In the case of *Hutchinson* v. *Fleming,* 40 Canada Sup. Ct.
Rep. 134, a broker undertook to procure for another two certain
lots, for which the principal was willing to pay certain stipulated
prices. The broker purchased one of the lots at a price lower
than that agreed upon, but turned it over to his principal at the
price which it was agreed the principal would be willing to
pay for the property. The court held that his duty required
him to account to his principal for this property at the price
he actually paid, and that his fraudulent conduct in turning
it over to his principal at a sum in excess of what he actually
paid for it deprived him of the right to have compensation for
his services.

So in the case of *Boston Deep Sea Fishing & Ice Co.* v. *Ansell,*
L. R. 39, Chan. Div. 339, the promotor of a corporation, who
was by contract to receive a salary from it for his services in
managing its affairs, entered into an arrangement with third
parties with whom the corporation was dealing by which he
received from such third parties secret profits upon the business
done by them with the corporation of which he was manager.
It was held that such conduct not only justified his dismissal,
but barred him from recovering any part of his salary for the
current year.

In the case of *Manitoba North-West Land Corporation* v.
*Davidson,* 34 Canada Sup. Ct. Rep. 255, where an agent repre-
sented to the manager of a land corporation that he could obtain
a purchaser for a block of its land he was given a right to do
so for a limited time, and upon negotiations with a prospective
purchaser it was found that such purchaser needed further time
within which to arrange for funds to make the purchase, and he
extended to him this time upon the agreement of such purchaser
to pay the agent the sum of five hundred dollars, and the sale
was subsequently carried out by the corporation, in a suit by the

agent for his commission it was held that he was not entitled to receive the same because of the secret arrangement made by him with the purchaser to have five hundred dollars for securing the additional time.

Many other cases might be cited to the same effect, but these sufficiently illustrate the principle. It seems to be the settled law of the land based upon principles of common honesty that an agent acting for his own benefit with the property of his principal will not be entitled to receive any compensation for his services, even though the principal may not be prejudiced by such misconduct.

It results from this that the judgment of the circuit court of Kanawha county complained of will be reversed, the findings of the court upon the agreed statement of facts set aside, and an order entered here finding for the defendant thereon, and rendering judgment accordingly.

*Reversed, and judgment for defendant.*