**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Roger Smith,**
**Defendant Below, Petitioner**

**vs.) No. 19-0410** (Harrison County 17-C-349)

**Stockmeier Urethanes U.S.A., Inc.,**
**a West Virginia Corporation,**
**Plaintiff Below, Respondent**

**and**

**Roger Smith,**
**Defendant Below, Petitioner**

**vs.) No. 20-0352** (Harrison County 17-C-349-2)

**Stockmeier Urethanes U.S.A., Inc., a**
**West Virginia Corporation,**
**Plaintiff Below, Respondent[1]**

### MEMORANDUM DECISION

Petitioner Roger Smith, by counsel Gregory H. Schillace, appeals the orders of the Circuit Court of Harrison County awarding a preliminary injunction against petitioner, denying petitioner's motion to disqualify the trial judge, and awarding sanctions against petitioner and his counsel. Further, petitioner argues that at the trial of this matter, the jury was not properly instructed. Respondent Stockmeier Urethanes U.S.A., Inc. by counsel Susan L. Deniker and Shawn A. Morgan, filed a response in support of the circuit court's orders.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, we find that the circuit court did not err. For this reason, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] By this Court's order dated November 16, 2020, Case Nos. 20-0352 and 19-0410 were consolidated for the purposes of consideration and decision.

Respondent is a company that "develops, produces, and sells polyurethane systems." The company supplies liquid urethanes materials to customers throughout the country for purposes of making things like playground mulch, turf for athletic fields, superglue, and sponges. Petitioner was formerly employed as respondent's Chief Operating Officer and Senior Advisor. In 2013, and again in January of 2017, respondent and petitioner entered into employment agreements to "prevent [petitioner] from engaging in misappropriation of [respondent's] trade secrets and/or from improperly accessing, using, or disclosing [respondent's] confidential and/or proprietary information." Despite the prohibitions contained within these agreements, on August 16, 2017, petitioner was observed carrying several binders of information related to his work to his car.[2] From February 2, 2017, through August 9, 2017, respondent contends that petitioner "used removable storage devices . . . and/or used a cloud-based storage medium . . . to acquire, download, and store confidential and proprietary information from respondent's computer systems."

On September 1, 2017, respondent's president and CEO, wrote to petitioner reminding petitioner of "his obligations to preserve confidentiality of [respondent's] proprietary information" and to insist "that [petitioner] immediately take the necessary steps to address and mitigate his violations of his employment agreement." Respondent's president and CEO wrote to petitioner again on September 12, 2017, terminating petitioner's employment and reminding petitioner of his "obligations to preserve confidentiality of [respondent's] proprietary information."

On November 9, 2017, respondent filed the underlying action against petitioner after learning that petitioner, in contravention of his employment agreement with respondent, had removed binders from respondent's property; had used removable storage devices to download and store respondent's confidential and/or proprietary information; and had e-mailed respondent's proprietary and/or confidential information to a shared personal e-mail account. Respondent further discovered that petitioner had created, saved, and printed documents evidencing that he intended to start a competing business and had permanently deleted the "sent" and "deleted" item folders on his company e-mail account.

In its underlying suit against petitioner, respondent asserted clams for breach of confidentiality, misappropriation of trade secrets, and for declaratory and monetary relief. As to declaratory relief, respondent sought a declaration that petitioner, "by virtue of his employment [with respondent] and as part of his employment arrangement with [respondent], is liable to keep confidential all proprietary information gleaned during the course of his employment with [respondent]." Further respondent sought a declaration that petitioner "may not appropriate any [of respondent's] trade secret[s]" and that petitioner "must produce his personal computing devices . . ., cellular telephone, e[-]mail accounts, [binders], and any thumb driver [or] other storage medium he used to preserve confidential or proprietary information . . . ." Respondent also asked for a declaration that petitioner was "obligated either to return any confidential or proprietary information," and that petitioner "must disclose to [respondent] any disclosure he made of [respondent's] confidential or proprietary information."

---

[2] Security video footage showed petitioner carrying said binders to his car "on six separate occasions on that day, using different doors."

Following the filing of its complaint, on November 13, 2017, respondent moved for a preliminary injunction against petitioner. Petitioner opposed an injunction. A hearing was held before the circuit court on December 8, 2017. By order entered on January 4, 2018, respondent was awarded a preliminary injunction. Specifically, the court found that respondent met its burden "to establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm [in] the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." The court directed petitioner to provide to respondent "certain items of personal property for inspection."

On March 16, 2018, respondent served its first set of discovery requests upon petitioner to determine what "confidential and proprietary information" petitioner had taken, where he had taken and stored such information, and whether he had returned all documents. Petitioner did not timely respond to the requests, despite two good faith letters from respondent. On May 10, 2018, respondent filed a motion to compel petitioner's responses and argued that the requests for admission be deemed admitted. Thereafter on June 5, 2018, respondent noticed the depositions of two individuals for June 20, 2018, in Iowa. On June 21, 2018, petitioner filed a motion to quash the subpoenas associated with the Iowa depositions, arguing that Iowa rules governing depositions and subpoenas had not been followed.[3]

Respondent responded to the motion to quash and argued the subpoenas were proper, that the motion to quash was not timely filed, and that respondent's counsel and representatives had already departed for Iowa before the motion to quash was faxed to respondent's counsel. Further, respondent argued that petitioner had contacted both of the Iowa deponents and "convinced one of them not to appear." Respondent argued that based on petitioner's actions it could not "draw any conclusion other" than petitioner "had acted in bad faith to obstruct and interfere with the discovery process."

On June 26, 2018, petitioner responded to respondent's first set of discovery requests. Respondent deemed the responses incomplete (citing that the same were incomplete, evasive, contained unverified answers to interrogatories, and produced no documents), and, on July 13, 2018, respondent filed a second motion to compel petitioner to cease interference with discovery and motion for sanctions. Respondent argued that petitioner had interfered with the Iowa depositions; still had not substantively responded to the initial set of discovery requests; and had repeatedly failed to respond to correspondence.

On August 9, 2018, the court granted respondent's motion to compel petitioner to cease interference with discovery and motion for sanctions and renewed motion to compel discovery responses. The court directed petitioner to "forthwith provide supplemental answers and responses to [respondent's] discovery requests." In the same order, the court denied petitioner's motions to quash as untimely filed and, as a mandatory reporter of unethical conduct, the court forwarded its order to the State of Iowa's Commission on the Unauthorized Practice of Law, requesting that it review petitioner's counsel's conduct. On August 20, 2018, respondent filed its affidavit of

---

[3] While the motion to quash was dated June 19, 2018, the motion was not filed in circuit court until June 21, 2018.

attorney's fees and expenses listing $4,395.29 in attorney's fees and costs associated with its motions to compel. By order entered on September 10, 2018, the court found respondent's expenses to be reasonable and ordered petitioner and his counsel to pay those expenses.

Following the August 9, 2018, order granting respondent's motion to compel, respondent's counsel corresponded with petitioner's counsel regarding discovery responses, and petitioner's counsel advised that petitioner would supplement the responses "toward the end of the final week in August." In reliance on this representation, respondent made travel and other arrangements to complete the deposition of witnesses in Illinois, Iowa, and North Carolina. However, despite being promised the supplemental discovery responses towards the end of the final week of August, the same were not forthcoming, and on September 5, 2018, respondent filed its second renewed motion to compel responses to respondent's first set of discovery requests. On September 6, 2018, the circuit court entered its order setting an expedited response deadline and ordering petitioner to file a response to petitioner's motions to compel by 4:00 p.m. on September 11, 2018. However, petitioner did not respond as directed.

On September 27, 2018, respondent filed a motion for sanctions for spoliation of evidence and violation of the court's January 4, 2018, order, and motion for expenses. Respondent argued that sanctions were proper as petitioner had engaged in "misconduct" and had made "materially false representations and/or omissions" regarding the items of evidence in the petitioner's possession or retained by him. Respondent noted that based upon the recent discoveries made by its expert's "analysis of [petitioner's] computer," it was apparent that petitioner violated the court's January 4, 2018, order to produce all storage devices he installed on his laptop computer. Further, respondent's expert discovered that several days following the court's entry of a preliminary injunction against petitioner ordering him not to destroy or dispose of personal computing devices, a person "re-installed the Microsoft operating system on [petitioner's] laptop computer." Respondent qualifies this re-installation as an "attempt to over-write information on the laptop computer hard drive to keep it from being available for [respondent's] review."

By order entered on October 1, 2018, the circuit court granted respondent's second renewed motion to compel and motion for expenses. Further, the court awarded attorney's fees to respondent for its second renewed motion to compel. In its order, the circuit court "particularly note[d], for purposes of the pleadings record pertaining to these particular motions" petitioner's and his counsel's "intentional failure to provide any [r]esponse whatsoever to these pending motions that were required by this [c]ourt pursuant to its September 6, 2018, . . . order." Further, the court related that in its prior orders regarding respondent's motions to compel that the court "strongly suggested" that "the parties and legal counsel adhere to all applicable rules and code provisions for good faith and fair dealings and completion of discovery without further court intervention." The court stated that "it appears that such suggestion fell upon deaf ears with respect to [petitioner] and his legal counsel." Respondent was directed to submit a statement of reasonable attorney's fees with regard to its second renewed motion to compel.

On October 11, 2018, respondent filed a motion to compel payment of the expenses associated with its motion to compel discovery awarded by the court's September 10, 2018, order. Thereafter, on October 15, 2018, petitioner moved to disqualify the circuit court, alleging that the judge exhibited "the appearance of a personal bias or prejudice against" petitioner in this and other

actions. By administrative order issued on October 30, 2018, this Court, in accordance with Rule 17.01 of the West Virginia Trial Court Rules, denied petitioner's motion to disqualify.

On October 17, 2018, respondent filed its affidavit of attorney's fees and expenses relative to respondent's motion for petitioner to cease interference with discovery, alleging expenses of $23,248.21 ($13,653.21 in costs and $9,595.00 in attorney's fees). In its order entered on November 26, 2018, the circuit court found respondent's claimed expenses to be reasonable under the applicable law and ordered petitioner and his counsel to pay respondent's expenses in the amount of $20,986.00 ($9,595 in attorney's fees and $11,391.00 in reduced costs).[4]

Further, on October 17, 2018, respondent also filed a motion for default judgment as a sanction for petitioner's continued failure to respond to discovery requests and court orders. Respondent filed a supplemental motion for default, hearing, and expenses on November 5, 2018. Petitioner failed to respond to any of the outstanding motions. By affidavit filed on November 15, 2018, respondent submitted additional expenses totaling $2,089.75. The court again directed petitioner to respond, but petitioner did not respond. On November 27, 2018, the court entered an order finding respondent's expenses to be reasonable and ordering petitioner and his counsel to pay respondent's expenses.

Ultimately, on November 30, 2018, the court entered an order awarding default judgment and summary judgment to respondent as to petitioner's counterclaims and respondent's claims against petitioner. Thus, the only issue remaining to be decided was the amount of damages, if any, owed to respondent by petitioner.

On December 10, 2018, in long-awaited supplemental discovery responses, petitioner identified thirty-three additional thumb drives in his possession, but did not produce such drives until after the close of discovery and after the court granted default and partial summary judgment to respondent. By order entered December 18, 2018, the circuit court reduced the judgment award of attorney's fees and expenses, which consolidated multiple previous orders into a single judgment order for execution by respondent against petitioner and his counsel, jointly and severally. The judgment order totaled $28,822.79.

On January 4, 2019, petitioner filed a motion to alter or amend the December 18, 2018, judgment order. On February 1, 2019, the circuit court denied petitioner's motion to alter or amend the judgment citing "overwhelming support for" denial, including petitioner and his counsel's willful failure to respond to respondent's affidavits, failure to request a hearing as to any of the awards, and that the discovery-related failures had been addressed at the pre-trial hearing but that petitioner's counsel "offered only minimal representations" regarding the reason for the discovery failures.

The circuit court related, in subsequent orders relating to executions of judgment against petitioner, that "[t]he length and breadth of litigation misbehavior perpetrated by petitioner and his legal counsel has never before been seen by this presiding judge during his almost 26 years of

---

[4] The reduction was based on an alternative calculation of the cost of commercial airfare as opposed to the actual amount respondent spent using its corporate plane to fly to Iowa.

service as a jurist for the 15th Judicial Circuit." Further, the court concluded that the imposition of the harshest possible sanction of default judgment and partial summary judgment against petitioner and in favor of respondent is "unquestionably required as a direct result of such misbehavior and is certainly justified in light of the totality of the proceedings herein."

The trial on respondent's damages, if any, related to petitioner's breach of contractual duties of confidentiality and loyalty and misappropriation of trade secrets was completed in December of 2019. At trial, the jury rejected the argument that respondent was entitled to any punitive damages or that the petitioner disclosed any trade secret of respondent. However, the jury did find damages of $500,000 on behalf of respondent for unjust enrichment. Further, the jury awarded compensatory damages to respondent, reportedly associated with the costs incurred by respondent in its efforts to determine the extent of petitioner's breach. It is from the award of sanctions against petitioner, judgment on behalf of respondent, and the jury's verdict that petitioner now appeals.

On appeal, petitioner argues six assignments of error.[5] Petitioner's first and fifth assignments of error are redundant. He contends in both that the circuit court abused its discretion in entering a preliminary injunction against petitioner.[6]

As to preliminary injunctions, we have held that

> "[i]n reviewing the exceptions to the findings of fact and conclusions of law supporting the granting of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting the temporary injunction and the ultimate disposition under an abuse of discretion standard, *West v. National Mines Corp.*, 168 W.Va. 578, 590, 285 S.E.2d 670, 678 (1981), we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo. Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syllabus Point 1, *State By & Through McGraw v. Imperial Mktg.*, 196 W.Va. 346, 472 S.E.2d 792 (1996).

[5] Petitioner's first three assignments of error were the assignments of error alleged by petitioner in 19-0410. Petitioner's fourth, fifth, and sixth assignments of error are the three assignments of error petitioner alleged in 20-0352.

[6] In the first assignment of error listed in his appellate brief, petitioner argues that the circuit court abused its discretion in granting judgment against petitioner and his counsel, including but not limited to, judgment as to liability, judgment as to petitioner's counterclaim, and entering a preliminary injunction against petitioner. However, in the argument section of his appellate brief, petitioner only references the circuit court's award of a preliminary injunction against petitioner. As petitioner has not addressed any other of the judgments rendered against him by the circuit court in the argument section of his brief under this assignment of error, we decline to address any such argument in this decision. Thus, our inquiry with regard to this assignment of error will relate only to the propriety of the award of a preliminary injunction against petitioner.

6

"The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion, in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ." Syllabus Point 4, *State v. Baker*, 112 W.Va. 263, 162 S.E. 154 (1932).

Syl. Pts. 2 and 3, *Ne. Nat. Energy LLC v. Pachira Energy LLC*, 243 W. Va. 362, 844 S.E.2d 133 (2020).

By order entered January 4, 2018, the circuit court granted respondent's motion for a preliminary injunction. Respondent sought the injunction to require petitioner to keep respondent's proprietary information confidential; to require petitioner to produce his personal computing devices, cellular telephone, e-mail accounts, three-ring binders, and storage media so that respondent could attempt to determine whether petitioner had taken or retained any of its proprietary information; to require petitioner to return respondent's proprietary information, destroy copies of it, and verify that he did not disclose it to others; and to require petitioner to disclose to respondent any disclosure that petitioner made of its confidential or proprietary information or any misappropriation of any of respondent's trade secrets. Respondent argued that a preliminary injunction was necessary because petitioner failed "to respond to [respondent's] attempts to rectify the situation, caused in part by [petitioner's] claim that he did not take or disclose [respondent's] proprietary information."

In its January 4, 2018, order, the circuit court found that under the West Virginia Trade Secrets Act ("WVTSA"), West Virginia Code § 47-22-1 to -10, petitioner's actions in copying, retaining, and/or disclosing any of respondent's trade secrets constituted misappropriation. Further, petitioner's actions in copying, retaining, and/or disclosing any of respondent's confidential or proprietary information without company authorization was a violation of the express terms of petitioner's employment agreement with respondent, as well as respondent's employee handbook. Respondent did not authorize petitioner's possession of any of its computer files or other information. The court found that absent a preliminary injunction, respondent would be unable to make a determination as to whether its trade secrets and other proprietary information were kept confidential and would cause irreparable harm to respondent.

Based on our examination of the record and the detailed orders of the court below, we find no abuse of the circuit court's discretion in awarding a preliminary injunction against petitioner. Petitioner clearly violated his employment agreement with respondent and was dilatory in providing information to respondent about the breadth of his disclosure and retention of proprietary information. We concur, under the limited circumstances of this case, with the circuit court's determination that absent a preliminary injunction, respondent would have been "unable to make a determination as to whether its trade secrets or other proprietary information [was] kept confidential and would cause irreparable harm to respondent." Accordingly, we find no abuse of the circuit court's discretion in awarding a preliminary injunction against petitioner.

In his second assignment of error, petitioner argues that the circuit court abused its discretion in granting judgment for respondent without a hearing and sanctions against petitioner's

counsel who is not a party to this action. In this assignment of error, petitioner disputes the propriety of the circuit court's award of sanctions against petitioner and his counsel under Rule 37 of the West Virginia Rules of Civil Procedure without a hearing. Petitioner is further critical of the circuit court's award of sanctions against a non-party to the instant case, petitioner's counsel. We disagree with petitioner and find no error in the award of sanctions against petitioner and his counsel.

For decades, this Court has recognized that "[a] court 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.' 14 Am. Juris., Courts, section 171." Syl. Pt. 3, *Shields v. Romine*, 122 W. Va. 639, 13 S.E.2d 16 (1940). Additionally, this Court has expressly found that "a trial court has inherent power to impose sanctions as a part of its obligation to conduct a fair and orderly trial." Syl. Pt. 4, in part, *Prager v. Meckling*, 172 W. Va. 785, 310 S.E.2d 852 (1983). We have further held that

> "[a]lthough Rule[]. . . 37 of the West Virginia Rules of Civil Procedure do[es] not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure that a sanction imposed is fashioned to address the identified harm caused by the party's misconduct."

Syl. Pt. 1, *Bartles v Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996).

Here the circuit court entered detailed orders setting forth the transgressions of petitioner and his counsel supporting the award of sanctions against them, jointly and severally. Petitioner failed to respond to respondent's multiple motions to compel. As the court noted in its November 30, 2018, omnibus ruling order,

> [t]he length and breadth of litigation misbehavior perpetrated by [petitioner] and his legal counsel has never before been seen by this presiding judge during his almost [twenty-six] years of service as a jurist . . . To describe such misconduct only as "serious" is a vast understatement. It has adversely affected [respondent's] ability to effectively discover, fully prosecute[,] or otherwise meaningfully mediate its case and asserted claims herein.

Further, the court found that petitioner "and his legal counsel have willfully ignored and refused to comply with multiple orders entered in this instant matter compelling discovery responses, scheduling deadlines for responsive pleadings, and directing other mandated pleading responses." Noting sixteen specific failures by petitioner and his counsel, the court reasoned that petitioner and his counsel's actions "completely frustrated the normal litigation process."

In the underlying case, petitioner never requested a protective order from the court regarding any of the areas of inquiry related to the motions to compel and did not submit any

written responses to respondent's motions to compel, which were each set on an expedited briefing schedule by the circuit court upon receipt of the motion. It is disingenuous of the petitioner to now complain of no opportunity to be heard when no request to be heard was made. Accordingly, we find no merit to petitioner's argument that it was error for the circuit court to award judgments against petitioner without a hearing. We further find no error with the circuit court's award of sanctions against petitioner's counsel for discovery violations, as, under the limited facts and circumstances of this case and the egregious and direct actions of petitioner's counsel, the same is permissible under Rule 37(a)(4)(A) of the West Virginia Rules of Civil Procedure.[7]

In his third assignment of error, petitioner suggests that the circuit court judge exhibited actual bias and prejudice against petitioner. In this assignment of error, petitioner reiterates the facts asserted in his October 15, 2018, motion to disqualify the circuit court.[8] When petitioner filed his motion to disqualify in October of 2018, Judge Bedell advised this Court of the petitioner's motion and informed the Court, in a detailed letter on which the parties were copied, that he did not believe his disqualification was warranted. Then Chief Justice Margaret Workman reviewed the matter, and an Administrative order was entered on October 30, 2018, indicating that this Court "determined that the evidence set out in support of the disqualification motion is insufficient to warrant such disqualification." Here, the petitioner's arguments on appeal do not cause this Court to reconsider its previous order; thus, we find that petitioner's third assignment of error is without merit.

In his fourth assignment of error, petitioner argues that the circuit court erred in instructing the jury. Specifically, petitioner complains regarding the following instruction:

> The [c]ourt has granted judgment in favor of [respondent] on its claim for breach of confidentiality. Therefore, [respondent] may be awarded compensatory damages. Compensatory damages for breach of contract are those damages that may fairly and reasonably be considered as arising naturally from the breach of the contract itself. [Respondent] must prove that it experienced economic damages.
>
> In addition, [respondent] may recover indirect or consequential damages that arise from special circumstances of the contract. In order to recover these indirect or consequential damages, [respondent] must prove, by a greater weight of the

---

[7] Rule 37(a)(4)(A) of the West Virginia Rules of Civil Procedure expressly states that if a motion to compel is granted, that the court "shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees . . . ."

[8] Petitioner argued that the judge's alleged bias was "evidenced" by the circuit court's (1) filing of a complaint with the State of Iowa Unlawful Practice of Law Committee against petitioner; (2) disparaging comments regarding counsel "in various orders;" (3) imposition of significant sanctions against counsel, without holding any hearings; and (4) arbitrarily shortening time frames for counsel for petitioner to respond.

evidence, that at the time of the contract, the parties could reasonably have anticipated that, because of special circumstances of the contract, these damages would be a probable result of a breach.

I instruct you that, with respect to [respondent's] claim for breach of confidentiality/duty of loyalty, these damages may include the value of [petitioner's] compensation during his period of disloyalty to [respondent].

Petitioner asserts that the last sentence of the instruction is not an accurate statement of West Virginia law. We have long held that "[w]hen reviewing a challenge to jury instructions, we consider the instructions given as whole and not in isolation to determine whether the instructions adequately state the law and provide the jury with ample understanding of the issues and the controlling principles of law." *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995)." *State v. LaRock*, 196 W. Va. 294, 308, 470 S.E.2d 613, 627 (1996).

In the instant case, respondent argues, and we concur, that there is no error with respect to the challenged jury instruction. The instruction is an accurate statement of West Virginia common law. *See Sutherland v. Guthrie*, 86 W. Va. 208, 216, 103 S.E. 298, 302 (1920) ("[A]n agent acting for his own benefit with the property of his principal will not be entitled to receive any compensation for his services, even though the principal may not be prejudiced by such misconduct."). Accordingly, under the limited facts and circumstances of this case we find no error.

In his final assignment of error, petitioner suggests that the circuit court erred in permitting the recovery of investigative costs claimed by respondent. However, our review of the verdict form returned by the jury reveals that the jury awarded respondent damages totaling $531,600, with $500,000 in "unjust enrichment" damages and $31,600 in compensatory damages. Petitioner does not identify what "investigative costs" he refers to in his appellate brief. We have repeatedly noted that "[j]udges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health and Human Res. ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Inasmuch as petitioner has failed to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, we decline to address this assignment of error on appeal.

For the foregoing reasons, we affirm the circuit court's award of a preliminary injunction against petitioner, the court's denial of petitioner's motion to disqualify the trial judge, the court's award of sanctions (attorney's fees and costs) against petitioner and his counsel, and the court permitting recovery of respondent's investigative costs. Further, we find that the jury was properly instructed.

Affirmed.

**ISSUED:** October 6, 2021

10

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton